# PERRY ET AL. *v.* THOMAS

No. 86–566.   Argued April 28, 1987—Decided June 15, 1987

MARSHALL, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BRENNAN, WHITE, BLACKMUN, POWELL, and SCALIA, JJ., joined. STEVENS, J., *post*, p. 493, and O'CONNOR, J., *post*, p. 494, filed dissenting opinions.

*Peter Brown Dolan* argued the cause for appellants. With him on the briefs was *Maren E. Nelson.*

*Bruce Gelber* argued the cause and filed a brief for appellee.

JUSTICE MARSHALL delivered the opinion of the Court.

In this appeal we decide whether § 2 of the Federal Arbitration Act, 9 U. S. C. § 1 *et seq.*, which mandates enforcement of arbitration agreements, pre-empts § 229 of the California Labor Code, which provides that actions for the collection of wages may be maintained "without regard to the existence of any private agreement to arbitrate." Cal. Lab. Code Ann. § 229 (West 1971).

## I

Appellee, Kenneth Morgan Thomas, brought this action in California Superior Court against his former employer, Kidder, Peabody & Co. (Kidder, Peabody), and two of its employees, appellants Barclay Perry and James Johnston. His complaint arose from a dispute over commissions on the sale of securities. Thomas alleged breach of contract, conversion, civil conspiracy to commit conversion, and breach of

fiduciary duty, for which he sought compensatory and punitive damages. After Thomas refused to submit the dispute to arbitration, the defendants sought to stay further proceedings in the Superior Court. Perry and Johnston filed a petition in the Superior Court to compel arbitration; Kidder, Peabody invoked diversity jurisdiction and filed a similar petition in Federal District Court. Both petitions sought arbitration under the authority of §§ 2 and 4 of the Federal Arbitration Act.[1]

The demands for arbitration were based on a provision found in a Uniform Application for Securities Industry Registration form, which Thomas completed and executed in connection with his application for employment with Kidder, Peabody. That provision states:

> "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions or by-laws of the organizations with which I register . . . ." App. 33a.

Rule 347 of the New York Stock Exchange, Inc. (1975), with which Thomas registered, provides that

> "[a]ny controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party . . . ." App. 34a.

---

[1] Section 2 provides, in relevant part:

"A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U. S. C. § 2.

Section 4 mandates judicial enforcement of arbitration agreements where a party has failed, neglected, or refused to arbitrate. 9 U. S. C. § 4.

Kidder, Peabody sought arbitration as a member organization of the New York Stock Exchange (NYSE). Perry and Johnston relied on Thomas' allegation that they had acted in the course and scope of their employment and argued that, as agents and employees of Kidder, Peabody, they were beneficiaries of the arbitration agreement.

Thomas opposed both petitions on the ground that § 229 of the California Labor Code authorized him to maintain an action for wages, defined to include commissions,[2] despite the existence of an agreement to arbitrate. He relied principally on this Court's decision in *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Ware,* 414 U. S. 117 (1973), which had also considered the validity of § 229 in the face of a pre-emption challenge under the Supremacy Clause, U. S. Const., Art. VI, cl. 2. Thomas maintained that the decision in *Ware* stood for the proposition that the State's interest in protecting wage earners outweighs the federal interest in uniform dispute resolution.

The Superior Court denied appellants' petition to compel arbitration.[3] *Thomas* v. *Kidder Peabody & Co.,* Civ. Action No. C529105 (Los Angeles County, Apr. 23, 1985) (reprinted at App. 128a–129a). The court characterized *Ware* as "controlling authority" which held that, "in accordance with California Labor Code Section 229, actions to collect wages may be pursued without regard to private arbitration agreements." *Id.,* at 129a. It further concluded that since Thomas' claims for conversion, civil conspiracy, and breach of fiduciary duty were ancillary to his claim for breach of

---

[2] Section 200(a) of the California Labor Code defines "wages" to include amounts earned on a "commission basis." Cal. Lab. Code Ann. § 200(a) (West 1971). The California Superior Court and the California Court of Appeal held below that the commissions at issue in this case fall within the statutory definition. App. 128a, 140a.

[3] The Federal District Court gave this ruling preclusive effect and entered a final order dismissing Kidder, Peabody's petition in the parallel proceeding. *Kidder, Peabody & Co.* v. *Thomas,* Civ. Action No. 85–1257RJK (CD Cal., Sept. 29, 1986) (reprinted at App. 245a); *id.,* at 235a.

contract and differed only in terms of the remedies sought, they should also be tried and not severed for arbitration. *Id.*, at 128a–129a. The Superior Court did not address Thomas' contention that Perry and Johnston were "not parties" to the arbitration agreement, *id.*, at 78a, and therefore lacked a contractual basis for asserting the right to arbitrate, an argument Thomas characterizes as one of "standing."[4]

Before the California Court of Appeal, appellants argued that *Ware* resolved only the narrow issue whether § 229 was pre-empted by Rule 347's provision for arbitration, given the promulgation of that Rule by the NYSE pursuant to § 6 of the Securities Exchange Act of 1934 (1934 Act), 48 Stat. 885, as amended, 15 U. S. C. § 78f, and the authority of the Securities and Exchange Commission (SEC) to review and modify the NYSE Rules pursuant to § 19 of the 1934 Act, 15 U. S. C. § 78s.[5] See 414 U. S., at 135. It was appellants' contention that, despite an indirect reference to the Federal Arbitration

---

[4] Having concluded that this Court's decision in *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Ware*, 414 U. S. 117 (1973), was dispositive, the California Superior Court also did not address Thomas' alternative argument that the arbitration agreement in this case constitutes an unconscionable, unenforceable contract of adhesion because "(a) the selection of arbitrators is made by the New York Stock Exchange and is presumptively biased in favor of management; and (b) the denial of meaningful . . . discovery is unduly oppressive and frustrates an employee's claim for relief." App. 74a.

[5] The Court of Appeal rejected appellants' contention that amendments to the 1934 Act since this Court's decision in *Ware* removed the theoretical underpinnings of that decision by expanding the scope of the SEC's authority under § 19 to review and modify NYSE rules. See 15 U. S. C. § 78s(c). Appellants continue to make this argument, in their appeal before this Court, as an alternative basis for distinguishing *Ware*. Brief for Appellants 17–20 (citing S. Rep. No. 94–75, pp. 22–38 (1975); *Drayer* v. *Krasner*, 572 F. 2d 348, 356–359 (CA2), cert. denied, 436 U. S. 948 (1978)). However, because we rest our decision exclusively on the Federal Arbitration Act, we decline to consider the pre-emptive effect of the amended 1934 Act as it relates to Thomas' agreement to be bound by NYSE Rule 347.

Act in footnote 15 of the *Ware* opinion, the pre-emptive effect of § 2 of the Act was not at issue in that case.

In an unpublished opinion, the Court of Appeal affirmed. *Thomas* v. *Perry*, 2d Civ. No. B014485 (2d Dist., Div. 5, Apr. 10, 1986) (reprinted at App. 139a–142a). It read *Ware*'s single reference to the Federal Arbitration Act to imply that the Court had refused to hold § 229 pre-empted by that Act and the litigants' agreement to arbitrate disputes pursuant to Rule 347. Thus, the Court of Appeal held that a claim for unpaid wages brought under § 229 was not subject to compulsory arbitration, notwithstanding the existence of an arbitration agreement. App. 140a–141a. Like the Superior Court, the Court of Appeal also rejected appellants' argument, based on this Court's decision in *Dean Witter Reynolds Inc.* v. *Byrd*, 470 U. S. 213 (1985), that the ancillary claims for conversion, civil conspiracy, and breach of fiduciary duty were severable from the breach-of-contract claim and should be arbitrated. App. 142a. Finally, the Court of Appeal refused to consider Thomas' argument that Perry and Johnston lacked "standing" to enforce the arbitration agreement. The court concluded that Thomas had raised this argument for the first time on appeal.[6] *Id.*, at 140a, n. 1.

---

[6] Objecting to appellants' request for a formal Statement of Decision from the Superior Court following summary denial of their motion to compel, Thomas argued that appellants had "no standing" to seek an order compelling arbitration. App. 120a. Perry and Johnston replied that their "standing" to seek arbitration inhered in their status as agents and employees of Kidder, Peabody, and as beneficiaries of the agreement between Kidder, Peabody and Thomas. *Id.*, at 124a. In response, Thomas simply argued that Perry and Johnston had submitted no supporting evidence to show they had acted as agents for Kidder, Peabody. *Id.*, at 132a. The Superior Court did not amend a Proposed Statement of Decision, see *id.*, at 128a–129a, to address these arguments, and it was formally adopted as the Statement of Decision from which Perry and Johnston appealed. *Id.*, at 135a.

Having based its decision "squarely on *Ware*," the Court of Appeal also declined to reach Thomas' alternative ground for supporting the Superior Court's decision not to compel arbitration: his contention that the arbi-

The California Supreme Court denied appellants' petition for review. *Id.*, at 144a. We noted probable jurisdiction,[7] 479 U. S. 982 (1986), and now reverse.

## II

"Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, 460 U. S. 1, 24 (1983). Enacted pursuant to the Commerce Clause, U. S. Const., Art. I, § 8, cl. 3, this body of substantive law is enforceable in both state and federal courts. *Southland Corp.* v. *Keating*, 465 U. S. 1, 11–12 (1984) (§ 2 held to pre-empt a provision of the California Franchise Investment Law that California courts had interpreted to require judicial consideration of claims arising under that law). As we stated in *Keating*, "[i]n enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Id.*, at 10. "Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." *Id.*, at 16 (footnote omitted). Section 2, therefore, embodies a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U. S. C. § 2. "We see nothing in the Act indicating that the broad principle of en-

---

tration provision constitutes an unconscionable, unenforceable contract of adhesion. *Id.*, at 141a, n. 3; see n. 4, *supra*.

[7] Jurisdiction over this appeal is provided by 28 U. S. C. § 1257(2). See *Southland Corp.* v. *Keating*, 465 U. S. 1, 6–8 (1984).

forceability is subject to any additional limitations under state law." *Keating, supra,* at 11.

In *Ware,* which also involved a dispute between a securities broker and his former employer, we rejected a Supremacy Clause challenge to § 229 premised in part on the contention that, because the 1934 Act had empowered the NYSE to promulgate rules and had given the SEC authority to review and modify these rules, a private agreement to be bound by the arbitration provisions of NYSE Rule 347 was enforceable as a matter of federal substantive law, and pre-empted state laws requiring resolution of the dispute in court. But the federal substantive law invoked in *Ware* emanated from a specific federal regulatory statute governing the securities industry — the 1934 Act. We examined the language and policies of the 1934 Act and found "no Commission rule or regulation that specifie[d] arbitration as the favored means of resolving employer-employee disputes," 414 U. S., at 135, or that revealed a necessity for "nationwide uniformity of an exchange's housekeeping affairs." *Id.,* at 136. The fact that NYSE Rule 347 was outside the scope of the SEC's authority of review militated against finding a clear federal intent to require arbitration. *Id.,* at 135–136. Absent such a finding, we could not conclude that enforcement of California's § 229 would interfere with the federal regulatory scheme. *Id.,* at 139–140.

By contrast, the present appeal addresses the pre-emptive effect of the Federal Arbitration Act, a statute that embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause. Its general applicability reflects that "[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered . . . ." *Byrd,* 470 U. S., at 221. We have accordingly held that these agreements must be "rigorously enforce[d]." *Ibid.;* see *Shearson/American Express Inc.* v. *McMahon, ante,* at 226; *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.,* 473

U. S. 614, 625–626 (1985). This clear federal policy places § 2 of the Act in unmistakable conflict with California's § 229 requirement that litigants be provided a judicial forum for resolving wage disputes. Therefore, under the Supremacy Clause, the state statute must give way.

The oblique reference to the Federal Arbitration Act in footnote 15 of the *Ware* decision, 414 U. S., at 135, cannot fairly be read as a definitive holding to the contrary. There, the Court noted a number of decisions as having "endorsed the suitability of arbitration to resolve *federally created* rights." *Ibid.* (emphasis added). Footnote 15 did not address the issue of federal pre-emption of *state-created* rights. Rather, the import of the footnote was that the reasoning—and perhaps result—in *Ware* might have been different if the 1934 Act "itself ha[d] provided for arbitration." *Ibid.*[8]

---

[8] First among the decisions cited in footnote 15 was *Wilko* v. *Swan*, 346 U. S. 427 (1953), in which the Court resolved a conflict between the Federal Securities Act of 1933 and the Federal Arbitration Act by holding that the policies of the former prevailed and that an arbitration agreement, for which enforcement was sought under the latter, was invalid. No federal pre-emption question was presented.

Only the unexplained citation to *Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.*, 388 U. S. 395 (1967), could be construed as a reference to principles of federal pre-emption. However, that case provides no support for Thomas' position. It arose as a diversity action in which one party to a contract containing an arbitration clause asserted a right under state law to judicial resolution of his claim of fraud in the inducement of the contract. The Court held that, while § 2 of the Federal Arbitration Act authorized judicial determination of a claim that the arbitration clause itself had been procured through fraud, a court could not decide whether fraud had induced the making and performance of the contract generally since this claim fell within the broad scope of the agreement to arbitrate. *Id.*, at 404. The Court dismissed the argument that the asserted right to judicial resolution adhered in state substantive law which a federal court sitting in diversity was bound to follow under the rule of *Erie R. Co.* v. *Tompkins*, 304 U. S. 64 (1938). It reasoned instead that Congress had enacted the substantive provisions of the Federal Arbitration Act pursuant, in part, to its constitutional power to regulate interstate commerce, 388 U. S.,

Our holding that § 2 of the Federal Arbitration Act preempts § 229 of the California Labor Code obviates any need to consider whether our decision in *Byrd, supra,* at 221, would have required severance of Thomas' ancillary claims for conversion, civil conspiracy, and breach of fiduciary duty from his breach-of-contract claim. We likewise decline to reach Thomas' contention that Perry and Johnston lack "standing" to enforce the agreement to arbitrate any of these claims, since the courts below did not address this alternative argument for refusing to compel arbitration. However, we do reject Thomas' contention that resolving these questions in appellants' favor is a prerequisite to their having standing under Article III of the Constitution to maintain the present appeal before this Court. As we perceive it, Thomas' "standing" argument simply presents a straightforward issue of contract interpretation: whether the arbitration provision inures to the benefit of appellants and may be construed, in light of the circumstances surrounding the litigants' agreement, to cover the dispute that has arisen between them. This issue may be resolved on remand; its status as an alternative ground for denying arbitration does not prevent us from reviewing the ground exclusively relied upon by the courts below.[9]

---

at 404–405, a distinction which endows these provisions with pre-emptive force under the Supremacy Clause.

[9] We also decline to address Thomas' claim that the arbitration agreement in this case constitutes an unconscionable, unenforceable contract of adhesion. This issue was not decided below, see nn. 4 and 6, *supra,* and may likewise be considered on remand.

We note, however, the choice-of-law issue that arises when defenses such as Thomas' so-called "standing" and unconscionability arguments are asserted. In instances such as these, the text of § 2 provides the touchstone for choosing between state-law principles and the principles of federal common law envisioned by the passage of that statute: An agreement to arbitrate is valid, irrevocable, and enforceable, *as a matter of federal law,* see *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.,* 460 U. S. 1, 24 (1983), "save upon such grounds as exist at law or in equity for the revocation of *any* contract." 9 U. S. C. § 2 (emphasis

## III

The judgment of the California Court of Appeal is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, dissenting.

Despite the striking similarity between this case and *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Ware*, 414 U. S. 117 (1973), the Court correctly concludes that the precise question now presented was not decided in *Ware*. Even though the Arbitration Act had been on the books for almost 50 years in 1973, apparently neither the Court nor the litigants even considered the possibility that the Act had preempted state-created rights. It is only in the last few years that the Court has effectively rewritten the statute to give it a pre-emptive scope that Congress certainly did not intend. See *Southland Corp.* v. *Keating*, 465 U. S. 1, 18–21 (1984) (STEVENS, J., concurring in part and dissenting in part). The dicta in some of these recent cases are admittedly broad enough to cover this case, see *ante*, at 489–491, but since none of our prior holdings is on point, the doctrine of *stare decisis* is not controlling. Cf. *Shearson/American Express Inc.* v. *McMahon*, *ante*, at 268–269 (STEVENS, J., concurring in part and dissenting in part). Accordingly, because I share

added). Thus state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2. See *Prima Paint*, *supra*, at 404; *Southland Corp.* v. *Keating*, 465 U. S., at 16–17, n. 11. A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law. Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what we hold today the state legislature cannot.

JUSTICE O'CONNOR's opinion that the States' power to except certain categories of disputes from arbitration should be preserved unless Congress decides otherwise, I would affirm the judgment of the California Court of Appeal.

JUSTICE O'CONNOR, dissenting.

The Court today holds that § 2 of the Federal Arbitration Act (Act), 9 U. S. C. § 1 *et seq.*, requires the arbitration of appellee's claim for wages despite clear state policy to the contrary. This Court held in *Southland Corp.* v. *Keating,* 465 U. S. 1 (1984), that the Act applies to state court as well as federal court proceedings. Because I continue to believe that this holding was "unfaithful to congressional intent, unnecessary, and in light of the [Act's] antecedents and the intervening contraction of federal power, inexplicable," *id.,* at 36 (O'CONNOR, J., dissenting), I respectfully dissent.

Even if I were not to adhere to my position that the Act is inapplicable to state court proceedings, however, I would still dissent. We have held that Congress can limit or preclude a waiver of a judicial forum, and that Congress' intent to do so will be deduced from a statute's text or legislative history, or "from an inherent conflict between arbitration and the statute's underlying purposes." *Shearson/American Express Inc.* v. *McMahon, ante,* at 227. As JUSTICE STEVENS has observed, the Court has not explained why state legislatures should not also be able to limit or preclude waiver of a judicial forum:

> "We should not refuse to exercise independent judgment concerning the conditions under which an arbitration agreement, generally enforceable under the Act, can be held invalid as contrary to public policy simply because the source of the substantive law to which the arbitration agreement attaches is a State rather than the Federal Government. I find no evidence that Congress intended such a double standard to apply, and I would not lightly impute such an intent to the 1925 Congress

which enacted the Arbitration Act." *Southland Corp.* v. *Keating, supra,* at 21.

Under the standards we most recently applied in *Shearson/American Express Inc.* v. *McMahon, ante,* p. 220, there can be little doubt that the California Legislature intended to preclude waiver of a judicial forum; it is clear, moreover, that this intent reflects an important state policy. Section 229 of the California Labor Code specifically provides that actions for the collection of wages may be maintained in the state courts "without regard to the existence of any private agreement to arbitrate." Cal. Lab. Code Ann. § 229 (West 1971). The California Legislature thereby intended "to protect the worker from the exploitative employer who would demand that a prospective employee sign away in advance his right to resort to the judicial system for redress of an employment grievance," and § 229 has "manifested itself as an important state policy through interpretation by the California courts." *Merrill Lynch, Pierce, Fenner & Smith* v. *Ware,* 414 U. S. 117, 131, 132–133 (1973).

In my view, therefore, even if the Act applies to state court proceedings, California's policy choice to preclude waivers of a judicial forum for wage claims is entitled to respect. Accordingly, I would affirm the judgment of the California Court of Appeal.