# 98 DTA 152

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL I DE SAN JUAN
## PANEL IV

EURO EXPRESS DISTRIBUTOR, INC.

Apelante

v.

TRIAD SYSTEMS CORPORATION
Apelada

Núm. KLAN-97-01040

San Juan, Puerto Rico, a 10 de marzo de 1998

Panel integrado por su Presidenta, la Juez López Vilanova,
el Juez Cordero y la Juez Feliciano Acevedo

Feliciano Acevedo, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

**I**

El apelante, Euro Express Distributor, Inc. (en adelante Euro), presentó recurso de apelación ante nos, el 2 de octubre de 1997. En éste nos solicita que este Tribunal revoque la sentencia dictada el 28 de agosto de 1997 por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante el Tribunal), que desestimó sumariamente una demanda de daños por incumplimiento de contrato bajo la errónea teoría de que el asunto tenía que ser sometido a arbitraje en - el estado de California, Estados Unidos de América.

La apelada, Triad Systems Corporation (en adelante Triad), radicó escrito de oposición a escrito de apelación, el 3 de noviembre de 1997. Teniendo el beneficio de ambos escritos, al igual que la réplica y dúplica, procedemos a resolver.

**II**

Euro es una compañía que se dedica a la venta de piezas de automóviles europeas y a labores de hojalatería. En el 1994, contrató con Triad la compra de equipo de computadoras para su uso, tanto en las oficinas como en los negocios.

El equipo conocido como System Triad Model Prism comenzó a ser implementado por Triad en el 1995. Alega Euro que comenzó a sufrir serias dificultades, problemas e inconvenientes en el uso y manejo del equipo de las computadoras. Por motivo de ello, sufrió pérdida de ventas en su negocio al igual que pérdidas comerciales. Esto motivó demanda contra Triad, el 24 de septiembre de 1996, ante

el Tribunal, por incumplimiento de contrato en la instalación de las computadoras, daños y perjuicios y cobro de dinero.

Triad es una corporación con oficinas principales en Livermore, California. El 30 de octubre de 1996, compareció mediante moción al Tribunal y solicitó prórroga para hacer sus alegaciones responsivas.

El 26 de diciembre de 1996, Triad radicó Moción Solicitando Desestimación y/o Paralización de los Procedimientos, en la cual hace constar que el contrato de compra y servicio entre las partes contiene una cláusula de arbitraje, por consiguiente, según esta cláusula la controversia planteada está sujeta a dicha cláusula.

El 31 de enero de 1997, Euro presentó oposición a la solicitud de desestimación presentada por Triad y, entre otras cosas, menciona que al existir un plazo de un año para que Triad ejercitara la opción de arbitraje, el plazo que tenía la demandada para solicitar el arbitraje de las controversias ya había vencido. Además, alega que la cláusula de arbitraje es nula porque provee para que el arbitraje se lleve a cabo en California.

El 25 de marzo de 1997, Triad replicó a la oposición, quedando el asunto sometido ante el Tribunal.

El 28 de agosto de 1997, el Tribunal emitió sentencia y ordenó la desestimación de la demanda, sin perjuicio de que inste nueva acción contra Triad, una vez culmine el procedimiento de arbitraje.

Recurre Euro ante este foro y nos solicita la revocación de la antes mencionada sentencia.

### III

El apelante, Euro, señala el siguiente error:

*"Erró Instancia al resolver que la controversia existente entre las partes está sujeta a arbitraje y ello fuera de Puerto Rico."*

■

Por los fundamentos que exponemos a continuación, se confirma la sentencia apelada.

Es norma general que en Puerto Rico existe una fuerte política pública en favor del arbitraje. Nuestro ordenamiento jurídico ha dispuesto que dos o más partes podrán pactar por escrito en someter sus controversias a arbitraje sobre cualquier controversia que pueda ser objeto de acción existente entre las partes a la fecha del pacto o convenio e, inclusive, incluir en un convenio por escrito una disposición para el arreglo mediante arbitraje de cualquier controversia que pudiera surgir en el futuro entre las partes por el acuerdo tomado o en relación con el mismo. *Universidad Católica de P.R. v. Triangle Engineering Corp.,* __ D.P.R. __ (1994), **94 J.T.S. 72.**

De una lectura al contrato sometido en el caso de marras por Euro y Triad, titulado *"Master Customer Agreement"*, la cláusula 13.7 de dicho contrato lee como sigue:

*"13.7 Arbitration. Any claim, dispute or controversy arising out of or relating to this Agreement, or the alleged breach or termination thereof, will be settled by arbitration conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association, as then in effect, except as provided in subparagraphs (a)-(d) below. You understand that by agreeing to arbitrate disputes, you are waiving your right to a jury trial."*

No cabe duda alguna que la intención de ambas partes, libremente y de surgir alguna controversia o disputa entre ellas, era resolverlo por medio del arbitraje.

Ante un convenio de arbitraje lo prudencial es la abstención judicial, aunque esta intervención no está vedada, señala nuestro más alto foro en *Universidad Católica, supra.* En el mismo caso, el Tribunal Supremo se expresó sobre el promover las cláusulas de arbitraje y citamos:

*"El interés estatal en promover el arbitraje como método para solucionar disputas se ve reflejado, además, en la presunción de arbitrabilidad cuando el contrato tiene una cláusula de arbitraje. En esas circunstancias, las "dudas deben resolverse a favor de dicha cobertura" AF & T Technologies Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1985).*

Además de esa presunción, hay un interés de promover las cláusulas de arbitraje contractuales. *AT & T, supra*, pág. 648-649. *"Es un corolario necesario del principio de que 'el arbitraje es una materia de contrato' que cuando las partes han provisto que un tipo particular de disputa debería ser arreglada en arbitraje, en lugar de en litigación, un tribunal no vulnerará dicho acuerdo decidiendo por sí mismo dicha disputa". National Railroad Passenger Corporation v. Boston and Maine Corporation,* 850 F. 2d. 756, 759 (D.C., Cir. 1988), citado en *World Films, supra.*

De los escritos sometidos por las partes ante el Tribunal, éste tuvo la oportunidad de estudiar la cláusula de arbitraje de contrato. Su abstención judicial fue lo prudente en dicha acción judicial.

Por último, tenemos que hacer constar el reclamo que Euro menciona en su escrito de apelación en cuanto a que el contrato fue otorgado entre dos partes domiciliadas en Puerto Rico y, por ende, la cláusula de arbitraje era nula, ya que su otorgación, efectividad y cumplimiento del contrato, recaían en la jurisdicción de Puerto Rico y no en Alameda County, California. En adición, sostuvo que si el dictamen del Tribunal se sostuviera, someter a arbitraje su reclamación y obligar a Euro a trasladarse fuera de Puerto Rico a un punto remoto del oeste de los Estados Unidos, es una condición gravosa, no sólo económicamente sino que equivaldría someter asuntos de nuestra ley a personas desconocidas de nuestro derecho y costumbres. Más aún, obligar a Euro a una revisión indeseable de un foro que no conoce nuestras raíces civilistas ni nuestra jurisprudencia, debe ser evitado a toda costa. No es ésta, razón para que Euro se niegue a trasladarse a la jurisdicción de California a ventilar su reclamo dando cumplimiento al arbitraje pactado. Aún más, por tratarse de una transacción en el comercio interestatal es de aplicación la Ley Federal de Arbitraje, 9 U.S.C. § 1 *et seq.*

En *World Films, Inc. v. Paramount Pict. Corp.*, 125 D.P.R. 352, 357-358, 362 (1990), nuestro más alto foro se expresó y citamos:

*"[1-2] La Ley Federal de Arbitraje establece una política federal a favor del arbitraje. Moses H. Cone Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Esta aplica a contratos en el comercio interestatal y establece que las cláusulas de arbitraje en un contrato de esa índole serán válidas, irrevocables y mandatorias. Una vez acordado el arbitraje, los tribunales carecen de discreción y tiene que dar cumplimiento al arbitraje acordado. Byrd v. Dean Witter Reynolds, Inc., 470 U.S. 213 (1985); Southland Corp. v. Keating, 465 U.S. 1 (1984). Más aún, cualquier duda sobre el alcance de las controversias que pueden ser llevadas a arbitraje debe resolverse a favor del arbitraje. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 626 (1985); Perry v. Thomas, 482 U.S. 483, 493 esc. 9 (1987)."*

No cabe duda que en el caso de marras, el contrato suscrito por Euro y Triad proveía para la venta de un equipo fabricado en los Estados Unidos y enviado a Puerto Rico desde las facilidades de Triad en California. Por lo tanto, el contrato es un contrato que provee para el comercio entre los Estados Unidos y Puerto Rico.

Bajo la Ley Federal de Arbitraje, 9 U.S.C § 1 *et seq.*, la cláusula escrita en el contrato comercial suscrito por las partes es una válida, irrevocable y obligatoria para el arbitraje de las controversias, excepto por razones que ameriten que el contrato sea revocado.

## V

Por los fundamentos antes expuestos, se confirma la sentencia del Tribunal de Primera Instancia, Sala Superior de San Juan, de fecha 28 de agosto de 1997. Las partes deberán someter sus reclamaciones ante el foro de arbitraje en Alameda County, estado de California, Estados Unidos de América, conforme a la cláusula 13.7(a) del *"Master Customer Agreement".*

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General