[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff filed this action, in several counts, alleging various employment-related claims. The employer moved to compel arbitration and to dismiss the judicial proceedings under the provisions of The Federal Arbitration Act. The underlying issue raised by these motions is whether an employee is bound to an employer's arbitration policy that is disseminated after the start of her employment without her agreement or additional consideration. This Court rules that an employer's unilateral arbitration policy without additional consideration does not automatically create an agreement to arbitrate under Connecticut law.
 FACTS
The plaintiff, Elaine Wood, was an employee of the defendant Connecticut General Life Insurance Company ("CGLIC"). She brings this action alleging that CGLIC constructively discharged and discriminated against her on the basis of her age and race in violation of General Statutes §§ 46a-58, 46a-60, and the common law. She also maintains similar allegations against CT Page 12324 defendant Electronic Data Systems ("EDS"), a company hired by CGLIC to train CGLIC employees in the operation, management and maintenance of certain information technology.
The plaintiff's employment with CGLIC started on November 112, 1984. On September 30, 1996, the plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). In October 1996, the plaintiff received a copy of CIGNA's Employment Dispute Arbitration policy. The arbitration policy states that "arbitration by a neutral third-party is the required and final means for the resolution of any serious disagreements and problems not resolved by the [CIGNA Investment Management] Division's internal dispute resolution process." The plaintiff resigned on September 2, 1997 and filed her complaint in this court on April 2, 1998.
The defendants moved to compel arbitration and dismiss the judicial proceedings on June 12, 1998. On August 13, 1998, the plaintiff filed an objection to defendants' motion to compel arbitration and dismiss judicial proceedings, with a supporting memorandum. The court heard oral arguments from the parties on August 17, 1998. The plaintiff filed a supplemental memorandum on August 26, 1998. The defendants filed their reply brief on September 2, 1998.
The defendants argue that CGLIC and the plaintiff entered into a valid agreement to arbitrate any employment disputes, and that therefore, a judicial forum is inappropriate. The defendants further contend that since certain EDS employees acted as agents of CGLIC, the plaintiff's claims against EDS should also be subject to arbitration.
The plaintiff states that there is no agreement to arbitrate between the parties. The plaintiff contends that there was no consideration for CGLIC's unilateral arbitration policy. In addition, the plaintiff argues that the Federal Arbitration Act does not apply, since the arbitration policy at issue is not a written provision arising out of a contract and the litigation before the court is not a controversy arising out of a contract.
 DISCUSSION
The court must determine whether the parties are bound by the provisions of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1
et seq.[1] "Section 2 [of the FAA] . . . embodies a clear federal CT Page 12325 policy if requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable upon such grounds as exist at law or in equity for the revocation of any contract." (Internal quotation marks omitted.)Perry v. Thomas, 482 U.S. 483, 489, 107 S.Ct. 2520,96 L.Ed.2d 426 (1987). During the course of her employment, the plaintiff used the United States Postal Service and engaged in communications with employees located in California, Florida, Illinois, and North Carolina as part of her duties for CGLIC. Since the plaintiff's employment with CGLIC involved interstate commerce and the terms of the arbitration policy were in writing, the court must interpret the terms of the FAA. See Genesco, Inc.v. T. Kakiuchi Co., 815 F.2d 840, 846 (2d Cir. 1987) (holding it is unnecessary for a written arbitration agreement to be signed).
In determining whether to stay proceedings and compel arbitration under the FAA, the court must consider: (1) whether the parties agreed to arbitrate; (2) the scope of the arbitration agreement; (3) if federal statutory claims are asserted, whether those claims are non-arbitrable; and (4) in the event some but not all of the claims are arbitrable, whether to stay the balance of the proceedings pending arbitration. See Genesco, Inc. v. T.Kakiuchi Co., supra, 815 F.2d 844. In the present action, the court only needs to consider whether the parties agreed to arbitrate.
The court must use Connecticut contract law to determine whether an agreement to arbitrate exists. The United States Supreme Court has held that "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts . . . should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago,Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920,131 L.Ed.2d 985 (1995). "Thus state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." (Emphasis in original.) Perry v. Thomas,supra, 482 U.S. 492 n. 9. "A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of [9 U.S.C.] § 2." Id., 492.
Under Connecticut law, an employee handbook or manual may give rise to an implied contract between an employer and its CT Page 12326 employee. Christensen v. Bic Corp. , 18 Conn. App. 451, 457,558 A.2d 273 (1989). The mere distribution of a new employment policy to an employee and the employee's continued work, however, do not necessarily demonstrate his consent to the proposed modification to the preexisting contract. See Torosyanv. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1,662 A.2d 89 (1995). While an employee can accept a benefit conferred by the employer without consideration beyond his continued employment, an employee does not necessarily accept a change in an employer's policy which substantially interferes with her legitimate expectations about the terms of her employment. SeeId., 18.
In the present case, the plaintiff had worked for CGLIC for twelve years before CGLIC's distribution of its arbitration policy. Prior to receiving the arbitration policy, the plaintiff filed a complaint with the CHRO. Once CGLIC informed the plaintiff about its new arbitration policy, the plaintiff told CGLIC that she did not wish to pursue arbitration. Since the plaintiff had already started the process necessary to support the present litigation, that the arbitration policy substantially interfered with the plaintiff's legitimate expectations concerning the terms of her employment, and it cannot be assumed that the plaintiff accepted CGLIC's arbitration policy.
Not only did the plaintiff refuse arbitration, CGLIC did not
state that the plaintiff was required to submit to arbitration. After the release of the arbitration policy, CGLIC merely told the plaintiff that arbitration of the claim was available to her
under the company's arbitration policy. In essence, CGLIC may have modified its offer to the plaintiff to make arbitration optional.[2] Since the plaintiff refused arbitration and continued to work for CGLIC, the Court finds that she did not consent to arbitration and it did not become a condition of her continued employment. CGLIC made an offer to modify the existing contractual relationship with the plaintiff. The plaintiff rejected that offer. The Court finds that a valid arbitration agreement does not exist between the parties.
A similar conclusion was reached in Gibbs v. ConnecticutGeneral Life Ins., Co., Superior Court, Judicial District of Hartford-New Britain at Hartford, Docket No. 567009 21 CONN. L. RPTR. 533 (March 3, 1998) (Hennessey, J.), in which CGLIC sought to compel arbitration based upon the same arbitration policy as the one before the CT Page 12327 court. In Gibbs, the Court held that CGLIC had not created a binding contract with its employee since CGLIC had not suffered any detriment, or proffered any additional benefit to the plaintiff, and there was no meeting of the minds between the parties. Id.
Similarly, the plaintiff in this action did not receive any additional benefit and CGLIC did not suffer any detriment by creating the arbitration policy. The defendant formed an arbitration policy on its own terms without any form of negotiation with the plaintiff. While CGLIC offered arbitration as an option to the plaintiff, the plaintiff did not accept it. Under the arbitration policy, the only party who did suffer a detriment was the plaintiff, since the arbitration policy would deprive her of the right to a jury trial under the Connecticut constitution. See Conn. Const., Art. I, § 19; Gibbs, supra. Since there was no consideration or meeting of the minds between the parties, the Court finds that no binding contract was formed between the parties regarding CGLIC's arbitration policy.
 CONCLUSION
For the foregoing reasons, the Court finds that the defendant's offered arbitration policy and the plaintiff's continued employment did not constitute a valid contract. The defendant's Motion to Compel Arbitration and Dismiss Judicial Proceedings is Denied.
BY THE COURT,
Hon. Jonathan J. Kaplan, J.