CENTRA INDUSTRIES, INC., Midwest Cable Communications of Arkansas, Inc., Larry C. Garriott, Lisa A. Trammell, Bonnie Capwell Brooks, Betty Jo Tyler, Mike Smith, and Mary Capwell, in her capacity as administrator of the Estate of O. Lee Capwell, Plaintiffs,

v.

MCGUIREWOODS, LLP, William A. Newman, Marcum & Kliegman, LLP, Philip F. Strassler, David C. Bukzin, John D. Gioioso, and Edwin C. Ballou, Defendants.

No. 03 Civ. 0656 (TPG).

United States District Court, S.D. New York.

June 27, 2003.

Ray A. Mantle, Leo G. Kailas, Craig Albert, Reitler, Brown, LLC, New York City, for Plaintiffs.

Frank W. Ryan, Robert C. Bernius, Nixon, Peabody, LLP, New York City, for McGuirewoods, LLP and William A. Newman.

Thomas R. Manisero, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, for Marcum & Kliegman, LLP, Philip F. Strassler, and David C. Bukzin.

Philip M. Halpern, Collier, Halpern, Newberg, Nolletti & Bock, LLP, White Plain, NY, for John D. Gioioso.

Kenneth J. Kelly, Epstein, Becker & Green, PC, New York City, for Edwin Ballou.

## MEMORANDUM ORDER

RAKOFF, District Judge.

Defendant John D. Gioioso moves the Court (a) to compel the two corporate plaintiffs to arbitrate Counts 7, 8, and 9 of the Complaint and (b) to dismiss those claims as to him. The Hon. Thomas P. Griesa, to whom this case is otherwise assigned, referred the motion to this Court, sitting in Part I, so that it could be expeditiously resolved in his absence. For the reasons that follow, that motion is granted with certain qualifications.

The pertinent allegations of the Complaint (assumed for purposes of this motion to be true) are as follows: The individual plaintiffs, citizens of Arkansas, are members of a family that owned four Arkansas corporations. Complaint ¶ 27. Defendant Gioioso, a promoter from Tennessee, approached the family with a "strategic plan" to consolidate their companies into a newly formed Delaware corporation, which would then become a public company through a reverse merger with a publicly traded shell company and use its shares to purchase other companies. *Id.* ¶¶ 28–29. Gioioso advised the family to retain certain lawyers and accountants in New York, here named as co-defendants, to assist in the transactions. *Id.* ¶¶ 32–36. In implementation of this plan, Midwest Cable Communications of Arkansas, Inc., an Arkansas corporation and predecessor in interest to plaintiff Midwest Cable Communications of Arkansas, Inc., a Delaware corporation ("Midwest Cable—Delaware"), together with plaintiff Centra Industries, Inc. ("Centra"), hired Gioioso as a consultant. *Id.* ¶ 30; Affidavit of John D. Gioioso, sworn to June 2, 2003 ("Gioioso Aff."), Ex. B ("Consulting Agreement") at 1.[1]

According to the Complaint, however, Gioioso was actually involved in self-dealing, and the net result was to subject plaintiffs to significant tax liabilities and unnecessary professional fees, as well as to cause them to issue shares without obtaining value in return and to impair the ability of the corporate plaintiffs to conduct their business. Complaint ¶ 4. On this basis, all the plaintiffs (corporate and individual) allege three causes of action against

---

1. Because the Consulting Agreement is directly referenced in the Complaint, it may be considered on a Rule 12 motion.

Gioioso personally: Fraud and Deceit (Count 7), Breach of Fiduciary Duty (Count 8), and Breach of Contract (Count 9). No other defendants are named in these counts.

■ With respect to the corporate plaintiffs (Centra and Midwest Cable—Delaware), Gioioso contends that all three claims must be arbitrated pursuant to an arbitration clause in the Consulting Agreement, which reads, in pertinent part:

> Except for termination for Cause under Section 11(b), any dispute or claim arising out of or relating to this Agreement or the validity, interpretation, enforceability or breach of this Agreement, which is not settled pursuant to Section 19(a) [discussion and non-binding mediation] will be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect, as amended by the following: . . . .

Gioioso Aff. Ex. B § 19(b). Federal law requires the Court to compel arbitration of disputes in accordance with agreements between the parties, 9 U.S.C. § 3, and "where, as here, the existence of an arbitration agreement is undisputed, doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability." *ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 29 (2d Cir.2002); *accord Specht v. Netscape Communications Corp.*, 306 F.3d 17, 35 (2d Cir.2002). While plaintiffs argue that, since Gioioso was ultimately terminated for cause, the entire provision is inapplicable, the Court, for the reasons already stated from the bench at the time of oral argument, *see* transcript, June 20, 2003, finds that the exception "for termination for Cause" only exempts from arbitration those disputes

relating to the termination itself, and that Counts 7 through 9 therefore allege claims that are within the scope of the arbitration clause.

■ Plaintiffs further argue, however, that Count 7, alleging fraudulent inducement of the Consulting Agreement, must nevertheless be litigated in court because the agreement contains a Tennessee choice-of-law clause, *see* Gioioso Aff. Ex. B § 18, and Tennessee state law does not compel arbitration of fraudulent inducement claims, *see Frizzell Const. Co., Inc. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79 (Tenn. 1999); *City of Blaine v. John Coleman Hayes & Assoc., Inc.*, 818 S.W.2d 33 (Tenn.Ct.App.1991).[2] Since, however, the Consulting Agreement "evidenc[es] a transaction involving commerce," it is governed by the Federal Arbitration Act and attendant federal common law, 9 U.S.C. § 2; *see Citizens Bank v. Alafabco, Inc.*, —— U.S. ——, 123 S.Ct. 2037, 2040–41, 156 L.Ed.2d 46 (2003); *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281–82, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), and, therefore, Tennessee state law applies to the interpretation and enforcement of the agreement only to the extent that federal substantive law so permits.

Although the agreement can be read to incorporate Tennessee procedural "rules" governing arbitration, *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), "the standard [Tennessee] choice-of-law clause in the [Consulting Agreement], on its own, is [not] sufficient to incorporate [Tennessee] decisional law on the allocation of powers between the court and the arbitrator," *Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129,

---

**2.** We assume without deciding that this rule does not hinge on whether the plaintiff seeks rescission or, as here, merely damages.

134 (2d Cir.1996); *see Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); *see also Volt,* 489 U.S. at 478, 109 S.Ct. 1248 ("[T]he FAA pre-empts state laws which 'require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.'"). Federal authorities, meanwhile, are legion that broad arbitration clauses cover fraudulent inducement claims unless the Complaint alleges that the arbitration clause in particular—and not merely the contract generally—was the product of fraud. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.,* 263 F.3d 26 (2d Cir.2001); *Garten v. Kurth,* 265 F.3d 136 (2d Cir.2001) ("'[There must be] some substantial relationship between the fraud or misrepresentation and the arbitration clause in particular.'") This rule holds regardless of whether state law differs. *Prima Paint,* 388 U.S. at 400 n. 3, 87 S.Ct. 1801.[3]

Here, the Complaint does not allege that the arbitration clause was the product of fraud. Accordingly, the corporate plaintiffs' claims against Gioioso under Count 7, like Counts 8 and 9, must be referred to arbitration.[4]

Turning to the claims of the individual plaintiffs in Counts 7, 8, and 9, Gioioso does not seek to compel such plaintiffs, who are not parties to the Consulting Agreement, to arbitrate these counts, but rather moves to dismiss those counts as failing to state a claim. *See* Fed.R.Civ.P. 12(b)(6).

■ Count 7, for fraud, alleges that Gioioso failed to disclose that the Consulting Agreement and two other agreements "were overreaching and not customary," would have to be disclosed during any public offering, and would impair the "strategic plan" to take the plaintiffs' companies public. Complaint ¶¶ 96–99. But the agreements themselves, which are incorporated by reference in the Complaint, ¶¶ 30–31, 41, and are therefore before the Court on this motion, make clear that the individual plaintiffs were not themselves party to any such final agreement. Specifically, the individual plaintiffs were not parties to either the Consulting Agreement with Gioioso, Gioioso Aff. Ex. B, or another consulting agreement with his company, Gioioso Aff. Ex. C, and while they did sign a securities subscription agreement, no defendant did, Gioioso Aff. Ex. D. To the extent, therefore, the individual plaintiffs allege they were defrauded into entering those agreements, which they never in fact entered, they have failed to state a claim.

At oral argument, plaintiffs' counsel contended that Count 7 also embraced a different theory of fraud beyond the agreements. Specifically, he argued that the sentence in the Complaint that reads, "The plaintiffs would not have undertaken the

3. *Perry v. Thomas,* 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987), relied on by the plaintiffs, does not alter this analysis. *Perry* affirms *Prima Paint's* holding, *see Perry,* 482 U.S. at 491 n. 8, 107 S.Ct. 2520., and, as cited by the plaintiffs, stands for the unremarkable proposition that the same state-law rules of contract interpretation apply to arbitration clauses as to any other agreements or parts thereof. *Perry,* 482 U.S. at 491 n. 9, 107 S.Ct. 2520. That is to say, were the Court required to consider whether the arbitration clause it-self were induced by fraud, it would look to Tennessee law.

4. To the extent, however, that the instant motion seeks dismissal of the claims of the corporate plaintiffs referred to arbitration, it must be denied. The proper course is to stay such claims in this Court while the arbitration proceeds. *See* 9 U.S.C. § 3; *Mann v. N.A.S.A. Int'l, Inc.,* No. 99 Civ. 11936(AGS), 2000 WL 1182823, at *6 (S.D.N.Y. Aug.21, 2000).

transactions described if they had known the true state of affairs concerning Gioioso, his intentions and the aforesaid agreements," Complaint ¶ 101, also embraces a theory of reliance by the individual plaintiffs on Gioioso independent of any written agreement. But the Court finds this single sentence is insufficient to state such a theory, even under the liberal notice pleading standards that govern most claims in federal court, much less the requirement to plead fraud with particularity. Fed. R.Civ.P. 9(b). For example, with respect to this theory, the Complaint fails to "detail the statements (or omissions) that the plaintiff contends are fraudulent," "state where and when the statements (or omissions) were made," or "explain why the statements (or omissions) are fraudulent," Count 7 must therefore be dismissed as alleged by the individual plaintiffs. *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir.1996).

■ Count 8 alleges a breach of fiduciary duty by Gioioso. The plaintiffs contend that Gioioso had a fiduciary duty to all plaintiffs "[a]s a consultant and advisor." Complaint ¶ 105. Assuming *arguendo* this suffices to allege a fiduciary duty, *compare Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 599 (2d Cir.1991); *AM Cosmetics, Inc. v. Solomon*, 67 F.Supp.2d 312, 320–21 (S.D.N.Y.1999); *Mandelblatt v. Devon Stores, Inc.*, 132 A.D.2d 162, 521 N.Y.S.2d 672, 676 (1st Dep't 1987); *and* Restatement 2d Torts § 874 cmt. a (1979) *with Lama Holding Co. v. Shearman & Sterling*, 758 F.Supp. 159, 163–64 (S.D.N.Y.1991); *Atkins Nutritionals, Inc. v. Ernst & Young, LLP*, 301 A.D.2d 547, 754 N.Y.S.2d 320, 322 (2d Dep't 2003); *and Carnegie v. H & R Block, Inc.*, 269 A.D.2d 145, 703 N.Y.S.2d 27, 29 (1st Dep't 2000), the Complaint does not sufficiently state how Gioioso breached it:

First, while Count 8 alleges that Gioioso failed to disclose that he was simultaneous-ly "proposing a similar arrangement to Utennco, Inc.," which led him to obtain an equity interest in that company, and that this constituted a conflict of interest, Complaint ¶¶ 106–08, nowhere does the Complaint even hint at how this conflicted with his alleged duty to the individual plaintiffs. Second, while Count 8 alleges that Gioioso failed to advise the plaintiffs about the "potential dilution" of their interest through a subscription agreement that would have allowed Gioioso to buy shares in Centra at a "nominal value," Complaint ¶¶ 41, 64, 109, nowhere does the Complaint allege that Gioioso ever actually purchased the shares or otherwise obtained an ownership interest in Centra such that plaintiffs' interest was diluted. Complaint ¶ 110. Indeed, it is a matter of record that the subscription agreement was never entered into by any defendant. *See* Gioioso Aff. Ex. D. Third, while Count 8 alleges that Gioioso failed to disclose that the consulting agreements and subscription agreement were "overreaching" and adverse to Centra's interests, as discussed with respect to Count 9, *infra*, the individual plaintiffs cannot rely on those agreements to make out a claim against Gioioso.

Accordingly, plaintiffs have failed to put Gioioso on sufficient notice of how he breached any fiduciary duty he might have owed the individual plaintiffs, and Count 8 must therefore be dismissed as alleged on the individual plaintiffs' behalf.

Finally, as to Count 9, counsel conceded during oral argument that that count, alleging breach of contract, was premised on the Consulting Agreement, and that the individual plaintiffs lack privity to enforce that agreement or any other contract with defendant. *See* transcript, June 20, 2003; *see also La Barte v. Seneca Resources Corp.*, 285 A.D.2d 974, 728 N.Y.S.2d 618, 620 (4th Dep't 2001). Accordingly, Count

9 as alleged on behalf of the individual plaintiffs is also dismissed.

In sum, Counts 7, 8, and 9 of the Complaint are dismissed to the extent they are brought by the individual plaintiffs and are referred to arbitration to the extent they are brought by the corporate plaintiffs. Any further application in this matter, including those for leave to re-plead, should be made to Judge Griesa.

SO ORDERED.