*Marc DAMBROSIO; * *Kenneth Saffren; Stanford Glaberson; Eric Brislawn; Joan Evanchuk–Kind; Lawrence Rudman; Barbi J. Weinberg; Michael Kellman; Caroline Cutler

v.

COMCAST CORPORATION; Comcast Cable Holdings, LLC; Comcast Cable Communications Holdings, Inc.; Comcast Cable Communications, Inc.; Comcast Holdings Corporation (*Amended per order of 2/17/05) (* *Amended per order of 3/2/05).

No. 04–4330.

United States Court of Appeals, Third Circuit.

Argued July 15, 2005.

Decided July 29, 2005.

Comcast Holdings Corporation (collectively "Comcast") of the United States District Court for the Eastern District of Pennsylvania's denial of Comcast's motion to compel arbitration of claims brought against it, on behalf of a putative class, by Marc Dambrosio, Kenneth Saffren, Stanford Glaberson, Eric Brislawn, Joan Evanchuk–Kind, Lawrence Rudman, Barbi J. Weinberg, Michael Kellman and Caroline Cutler (collectively "Appellees"). Appellees have alleged violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2.

The District Court had jurisdiction over these claims pursuant to 28 U.S.C. § 1331. We have jurisdiction over the order denying the motion to compel arbitration pursuant to 28 U.S.C. § 1291 and 9 U.S.C. § 16(a)(1)(B).

The District Court concluded that Comcast was required by federal regulations to provide notice to its subscribers 30 days in advance of the changes in its arbitration agreement with the Appellees, that Comcast failed to provide this advance notice as required and that this failure to provide notice invalidated the arbitration agreement. For the reasons set forth we do not agree with the District Court's determination and will reverse the judgment of the District Court and remand for further proceedings in accordance with this opinion.

## I.

Because we write only for the parties, who are familiar with the facts, procedural history and contentions presented, we will not recite them except as necessary to the discussion.

## II.

Appellees are Comcast subscribers (or in one case a former subscriber) in the Chicago and Philadelphia regions seeking to avoid arbitration so that they can assert

Jaime A. Bianchi (Argued), Christopher M. Curran, George L. Paul, White & Case LLP, Washington, DC, Rima Y. Mullins, White & Case LLP, Miami, FL, Darryl J. May, Jason A. Leckerman, Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, PA, for Appellants.

Samuel D. Heins, Stacey L. Mills, Alan I. Gilbert (Argued), David Woodward, Jessica N. Servais, Heins Mills & Olsen, P.L.C., Minneapolis, MN, Joshua H. Grabar, Anthony J. Bolognese, Michael E. Gehring, Philadelphia, PA, Barry Barnett, John Turner, Susman Godfrey, LLP, Dallas, TX, Ann D. White, Mager, White & Goldstein, Jenkintown, PA, for Appellees.

Before ALITO, VAN ANTWERPEN and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This is an appeal by Comcast Corporation, Comcast Cable Holdings, LLC, Comcast Cable Communications Holdings, Inc., Comcast Cable Communications, Inc. and

antitrust claims in court on behalf of a putative class.

For the Philadelphia region, Comcast introduced the arbitration clause it now seeks to enforce by placing it, along with the other "Terms and Conditions," on the back of pre-printed Work Order forms beginning in December of 2001. Comcast contends that Appellees Glaberson, Weinberg, Saffren, Dambrosio and Cutler would have received work orders with the arbitration clause printed on the back based on service they received after December 2001. Additionally, some of the Philadelphia Subscribers received a Welcome Kit when they signed up for service that contained the arbitration clause. The arbitration clause provides "MANDATORY AND BINDING ARBITRATION—EXCEPT AS PROVIDED BELOW, ANY CLAIM OR CONTROVERSY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE SERVICES PROVIDED UNDER THIS AGREEMENT, SHALL BE SETTLED BY ARBITRATION."

In the Chicago region, Comcast sent out a booklet entitled "Policies & Practices—Notice to Customers Regarding Policies, Complaint Procedures & Dispute Resolution." This booklet was sent with the monthly bills for November, 2002 and November, 2003. It provides in relevant part "MANDATORY AND BINDING ARBITRATION: IF WE ARE UNABLE TO RESOLVE INFORMALLY ANY CLAIM OR DISPUTE RELATED TO OR ARISING OUT OF THIS AGREEMENT OR THE SERVICES PROVIDED, WE HAVE AGREED TO BINDING ARBITRATION EXCEPT AS PROVIDED BELOW." This clause replaced an already existing arbitration clause.

### III.

We review the District Court's conclusions of law *de novo*. *See First Liberty Inv. Group v. Nicholsberg*, 145 F.3d 647, 649 (3d Cir.1998) (reviewing the denial of a motion to compel arbitration *de novo*).

### IV.

█ The District Court based it decision not to compel arbitration on a severely limited basis—the failure to provide an advance 30–day notice to subscribers as required by 47 C.F.R. §§ 76.1602 & 76.1603, which interpret and implement a portion of the Cable Television and Consumer Protection Act, 47 U.S.C. § 552(c).[1]

---

1. Section 552(c) provides:

A cable operator may provide notice of service and rate changes to subscribers using any reasonable written means at its sole discretion. Notwithstanding section 543(b)(6) of this title or any other provision of this chapter, a cable operator shall not be required to provide prior notice of any rate change that is the result of a regulatory fee, franchise fee, or any other fee, tax, assessment, or charge of any kind imposed by any Federal agency, State, or franchising authority on the transaction between the operator and the subscriber.

The regulations provide:

Customers will be notified of any changes in rates, programming services or channel positions as soon as possible in writing.

Notice must be given to subscribers a minimum of thirty (30) days in advance of such changes if the change is within the control of the cable operator. In addition, the cable operator shall notify subscribers 30 days in advance of any significant changes in the other information required by § 76.1602.
47 C.F.R. § 76.1603(b) (emphasis added).
And, in relevant part:

the cable operator shall provide written information on each of the following areas at the time of installation of service, at least annually to all subscribers, and at any time upon request ... (2) Prices and options for programming services and conditions of subscription to programming and other services.
47 C.F.R. § 76.1602(b)(2) (emphasis added).

Though the regulations make clear that Comcast was required to provide 30 days notice of the change in its terms of subscription, they do not speak to the type of notice required. The statute states that the notice may be provided "using any reasonable written means at [the cable company's] sole discretion." 47 U.S.C. § 552(c) (2000).

In both Philadelphia and Chicago, Comcast provided notice of the new arbitration clause by setting forth the full text of the subscription agreement. This is not ideal notice because it does not draw the attention of the subscriber to changes in the agreement. We are not, however, called upon to decide whether the form of notice used by Comcast was ideal. Rather, we must decide whether Comcast's provision of the full text of the subscriber agreement, which included the new arbitration clause, was a "reasonable written means" with which to provide notice. *See* 47 U.S.C. § 552(c). Moreover, because the complaint was filed more than 30 days after the Appellees would have received a Work Order, Welcome Kit, or billing insert containing the applicable arbitration clause, there is no question that Comcast did not attempt to compel arbitration before the expiration of the 30–day waiting period and, therefore, the notice also satisfied the requirements of 47 C.F.R. §§ 76.1602 & 76.1603.

Our task in deciding whether the notice provided was legally sufficient is made easier by the strong presumption in favor of arbitration present in the Federal Arbitration Act, 9 U.S.C. §§ 1–16. *Perry v. Thomas*, 482 U.S. 483, 489, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (determining that with the FAA "Congress declared a national policy favoring arbitration") (citation omitted). In view of this strong federal presumption in favor of arbitration, we have no trouble concluding that the notice given, while not ideal, satisfied the requirements of 47 U.S.C. § 552(c) and the interpreting regulations.[2]

■ Independent of our conclusion that 47 U.S.C. § 552(c) was not violated, we conclude that the new arbitration agreement in the Chicago area did not "significantly change" the arbitration agreement that was previously in effect in that area for purposes of 47 C.F.R. § 76.1603(b). The District Court describes the changes that were made by the new arbitration clause.

> The 2001 arbitration clause differs from the 2002/2003 clause in several respects. The 2001 clause provides for arbitration under the rules of the American Arbitration Association, while the 2002/2003 clause allows the consumer to elect arbitration under the rules of either the American Arbitration Association, the Judicial Arbitration & Mediation Service, or the National Arbitration Forum. In addition, the 2001 arbitration clause provides the application of federal or Colorado law, while the 2002/2003 clause contains no choice of law provision. The 2001 arbitration clause explicitly deals with retroactivity and the severability of unenforceable portions of the agreement, while the 2002/2003 clause is silent on both matters. Finally, the 2001 clause requires that consumers pay their "share" of the arbitration association's fees and the arbitrator's costs and expenses, while Comcast agrees to bear those expenses in the 2002/2003 clause.

2. To the extent that any Appellee disputes receipt of the text of the applicable arbitration agreement in a Welcome Kit, Work Order or billing insert, such dispute should be resolved, if necessary to its determination of the case consistent with this opinion, by the District Court on remand.

*Dambrosio v. Comcast Corp.,* No. Civ. A. 03–6604, 2004 WL 2577548, *4 (E.D.Pa. Oct. 8, 2004).

The District Court concluded that these changes were significant. Although the changes are "significant" in the sense that they are not unimportant or insubstantial, it is also clear that the changes either benefitted or did not in anyway adversely affect the subscribers. The Cable Act and the regulations that interpret it are designed to protect subscribers to cable service; surely subscribers do not need to be protected from changes to their subscription agreements which benefit them. The most logical reading of the term "significant changes" in the regulation, therefore, is significant from the perspective of the subscriber; i.e. changes which adversely affect subscriber rights in a significant way. Because none of the changes from the 2001 arbitration clause to the 2002/2003 arbitration clause negatively affected subscriber rights at all, let alone in a significant way, 30–day advanced notice of the 2002/2003 arbitration clause was not required.

\* \* \* \* \* \*

The judgment of the District Court will be reversed and remanded for consideration of whether enforcement of the arbitration clauses is barred by contract, unconscionablity or any other contention raised below but not considered in the Court's initial decision.