**CHINA RESOURCE PRODUCTS (U.S.A.) LTD., Plaintiff,**

v.

**FAYDA INTERNATIONAL, INC., Defendant.**

Civ. A. No. 90–159–JLL.

United States District Court, D. Delaware.

Sept. 7, 1990.

should be enjoined.

Edmund N. Carpenter, II, and Emily B. Horton of Richards, Layton & Finger, Wilmington, Del. (Eduardo L. Tabio of Fox & Horan, New York City, of counsel), for plaintiff.

Michael B. McCauley of Palmer, Biezup & Henderson, Wilmington, Del. (Thomas R. Kellogg of CPM Industries, Wilmington, Del., of counsel), for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

This contract dispute, which involves hundreds of thousands of dollars and the shipment of goods in international commerce, is actually the story of Little Red Riding Hood. Or so the defendant in this case apparently believes. The defendant describes itself as a small, American trading company. (*See* D.I. 13 at 10.) The plaintiff, on the other hand, although masquerading as a mere New York corporation, is in reality allegedly an arm of the People's Republic of China. (*Id.*) The latter, "one of the largest governments on earth" (*id.*), stars as the current dispute's Big Bad Wolf.

Presently before the Court is a motion by the plaintiff, brought pursuant to the Federal Arbitration Act ("FAA" or "the Act"), 9 U.S.C. §§ 1–15, to stay pending arbitration of a counterclaim filed by the defendant. The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a),[1] as the amount in controversy is in excess of $50,000, exclusive of interest and costs (*see* D.I. 1 at ¶ 3; D.I. 6 at ¶¶ 53–54), and the parties are citizens of different states.[2] For the rea-

---

1. Although this case is controlled by federal law, *i.e.* the Federal Arbitration Act, 9 U.S.C. §§ 1–15, *see infra* pp. 1104–1105, the Court does not have federal question jurisdiction. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983).

2. China Products is incorporated under the laws of the State of New York and has its principal place of business in the City of New York. (D.I. 1 at ¶ 1; D.I. 6 at ¶ 1.) Fayda is a Delaware corporation which has its principal place of business in Wilmington. (D.I. 1 at ¶ 2; D.I. 6 at ¶ 2.)

sons noted below, the Court will grant the plaintiff's motion.

## FACTUAL BACKGROUND

Plaintiff, China Resource Products (U.S.A.) Ltd. ("China Products"), initiated this lawsuit against defendant, Fayda International, Inc. ("Fayda"), for allegedly breaching a contract pursuant to which Fayda had agreed to purchase from China Products 187 metric tons of Chinese aluminum (hereinafter "the 1989 contract"). (*See* Docket Item ["D.I."] 1 at ¶ 5.) Fayda responded by denying liability and filing a counterclaim. This counterclaim alleges injury resulting from China Products' tardy performance of an earlier and different contract between the parties for the purchase of 200 metric tons of Chinese aluminum (hereinafter "the 1987 contract"). (*See* D.I. 6 at ¶¶ 46–54.)

China Products maintains that the 1987 contract between it and Fayda contains a clause which requires Fayda to submit its counterclaim to arbitration. (D.I. 8 at ¶ 6.) According to China Products, the 1987 contract consists of a written sales contract, which is dated July 13, 1987 and numbered "87MBN–010" (hereinafter "the July '87 writing"). (*See* D.I. 9, Affidavit of Guo–Qing Chen, Administrative Manager of China Products ["Chen Aff."] at ¶ 9; *see also id.*, Exhibit A [copy of contract].) This July '87 writing is signed by both parties[3] and contains a broad arbitration clause on which China Products relies in its current motion to stay Fayda's counterclaim:

> ARBITRATION: All disputes arising in connection with this Sales Contract or the execution thereof shall be settled amicably by negotiation. In case no settlement can be reached, the case under dispute shall then be submitted for arbitration to the Foreign Trade Arbitration Commission of the China Council for the Promotion of International Trade in accordance with the Provisional Rules of

Procedure of the Foreign Trade Arbitration Commission of the China Council for the Promotion of International Trade. The decision of the Commission shall be accepted as final and binding upon both parties.

(D.I. 9, Exhibit A.)

Fayda describes its 1987 contract with China Products rather differently. It contends that the parties' sale agreement for these two hundred metric tons of aluminum was first concluded on August 21, 1987, and is contained in a writing dated as such (hereinafter "the August '87 writing"). (D.I. 13 at 5; *cf.* D.I. 6 at ¶ 47.) This August '87 writing, which is signed by the parties, is labeled at the top as a "CONTRACT Amendment" and states that it is a letter meant to "confirm the agreement between ... [Fayda and China Products] to amend contract No. 87MBN–010, dated July 13, 1987, as follows...." (D.I. 6, Exhibit E [the August '87 writing].) Below these words are listed, *inter alia*, price, quantity, and delivery terms. (*See id.*) The delivery terms state that 17 metric tons were to be shipped first, with the remaining 183 metric tons to follow a few weeks later. (*See id.*)

Fayda maintains that after the 183–metric ton balance was not shipped in October of 1987 as agreed, the parties entered into a new contract for the purchase the same 183 metric tons of aluminum. (*Cf.* D.I. 6 at ¶¶ 47–48.) This second contract, which called for a higher, per pound price and delivery of the 183 metric tons of aluminum in May of 1988, was allegedly entered into on March 1, 1988. (*See id.* at ¶ 48.) As evidence of the existence of this agreement, Fayda offers two telefaxes. The first telefax was sent by Fayda to China Products and, in essence, recites a per pound price and a May 1988 shipment date. (*See* D.I. 6, Exhibit F.) The second telefax, which was China Products' response (*see* D.I. 6 at ¶ 48), confirms the

---

**3.** This sales contract (the July '87 writing) actually refers to the parties as, respectively, "Fayda Company" and "China National Metals & Minerals Import & Export Corporation Beijing Branch." (*See* D.I. 9, Exhibit A.) Fayda has proffered a subsequent writing, *see infra* this page (discussing the August '87 writing), which similarly names the parties. (*See* D.I. 6, Exhibit E.) This discrepancy is, however, immaterial in this case because neither of the two parties before the Court denies executing these two documents. *Cf. infra* note 4.

price quoted by Fayda and states that shipment would be made in April or May. (*See* D.I. 6, Exhibit G.) In accepting the price stated by Fayda, China Products' telefax makes reference to the parties' July '87 writing: "ACCORDING OUR [sic] S/C 87MBN–010, THE PRICE SHALL BE USDO.86/LB. [sic]." (*Id.*)

Apparently, the 183 metric tons were never shipped pursuant to this alleged, second contract because Fayda argues that the parties entered into yet another agreement for the same shipment of aluminum. According to Fayda, the parties entered into a third contract in May of 1988. (*See* D.I. 6 at ¶ 49.) This alleged third agreement involved a new price arrangement and called for a June delivery date. (*See id.*) Fayda's allegations do not specify whether this agreement was oral or written, and Fayda has not proffered any evidence to substantiate its existence. (*Cf. id.*)

Following this alleged May 1988 agreement, the parties purportedly entered into yet another, now fourth, contract for the purchase of the 183 metric tons at issue. Although Fayda's claims regarding the latter contract are somewhat difficult to decipher, the Court understands its argument to be that the parties' alleged fourth and final agreement regarding the 183 metric tons consists of certain oral price and shipping arrangements made on August 2, 1988 and November 11, 1988. (*See id.* at ¶¶ 50–52.) To support the existence of this fourth contract, Fayda offers two telefaxes and an invoice. (*See* D.I. 6, Exhibits H–J.) The telefaxes are confirmations by the parties of two, different aluminum prices. (*Compare* D.I. 6, Exhibit H *with* D.I. 6, Exhibit I.) The invoice is dated November 11, 1988 and seems to indicate that the 183 metric tons, which were in fact finally delivered (*cf.* D.I. 6 at ¶ 53), had been shipped earlier, on August 24th. (*See* D.I. 6, Exhibit J.)

In sum, Fayda contends that the parties entered into no less than four different contracts for the purchase of the 183 metric tons of aluminum that were initially contracted for in the August '87 writing but were never shipped. Fayda maintains that the arbitration clause contained in the July '87 writing did not become part of these subsequent contracts. Thus, Fayda argues there is no existing arbitration agreement between the parties.

According to China Products, the parties entered into only one agreement, the July '87 writing. What Fayda calls subsequent contracts, China Products characterizes as at most merely modifications of the July '87 writing. (*See* D.I. 15 at 3.) Hence, China Products contends that the arbitration agreement contained in the July '87 writing remained in effect and, consequently, is still part of the parties' modified 1987 contract. Accordingly, China Products now moves, pursuant to section 3 of the FAA, 9 U.S.C. § 3, to stay Fayda's counterclaim pending arbitration. (D.I. 8.)

Both sides have had an opportunity to present their arguments on China Products' motion for a section 3 stay. The parties briefed the issues (*see generally* D.I. 8; D.I. 9; D.I. 12; D.I. 13; D.I. 15), and the Court heard oral argument on the motion. (*See* D.I. 20 [transcript].)

## DISCUSSION

The FAA "embodies a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Perry v. Thomas*, 482 U.S. 483, 489, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987) (quoting 9 U.S.C. § 2). The effect of the FAA is "to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses Cone*, 460 U.S. at 24, 103 S.Ct. at 941; *see also Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 43 (3d Cir.1978).

There is no doubt that the July '87 writing's arbitration provision is covered by the FAA. Both parties concede entering into

this agreement to arbitrate.[4] The arbitration agreement is in writing, as required by the FAA. *See* 9 U.S.C. § 2. Furthermore, no one has disputed that the contract "evidenc[es] a transaction involving commerce," *id.*, as that term is defined under the FAA. *See* 9 U.S.C. § 1. The July '87 writing therefore falls within the FAA, and its construction and enforceability is governed by federal law. *See Moses Cone,* 460 U.S. at 24–25, 103 S.Ct. at 941–42; *see also Becker Autoradio,* 585 F.2d at 43.

*General Federal Law Arbitration Principles*

Having determined that the parties' arbitration agreement is subject to the FAA, the only real question facing the Court is whether any of Fayda's four defenses to enforcement of the agreement have merit. In considering Fayda's arguments against arbitration, the Court will keep in mind that "in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). Furthermore, the appropriate inquiry for a motion to stay under the FAA is whether *"the court ... is ... satisfied* that the issue involved in such suit or proceeding is referable to arbitration under ... an [arbitration] agreement...."* 9 U.S.C. § 3 (emphasis added).

■ In evaluating Fayda's arbitration challenges, the Court will also consider certain important principles of federal arbitration law. First, "[a]rbitration is a matter of contract between the parties...." *Par-knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.,* 636 F.2d 51, 54 (3d Cir.1980); *see also*

*Dougherty v. Mieczkowski,* 661 F.Supp. 267, 274 (D.Del.1987). Thus, an agreement to arbitrate is "as enforceable as other contracts, but not more so." *Prima Paint,* 388 U.S. at 404 n. 12, 87 S.Ct. at 1806 n. 12; *see also* 9 U.S.C. § 2. Second, "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses Cone,* 460 U.S. at 24–25, 103 S.Ct. at 941.

■ Before turning to Fayda's four arguments against arbitration, the Court notes that neither party briefed the issue of the proper standard to be applied in evaluating a section 3 motion for stay. Given the nature of this matter—Fayda seeks an evidentiary hearing, while China Products contests the necessity of such a hearing because of the alleged absence of any genuine factual issue—the Court will apply a summary judgment type standard to resolve the dispute.[5] Accordingly, the Court will "give the opposing party[, here Fayda,] the benefit of all reasonable doubts and inferences that may arise." *Par-knit Mills,* 636 F.2d at 54.

*Novation vs. Modification*

■ Fayda's first argument against China Products' motion for stay is that the final contract between the parties did not

---

**4.** Counsel for Fayda explicitly conceded this point at oral argument. (*See* D.I. 20 at 9 [transcript].) Moreover, Fayda had already implicitly made this concession by proffering the August '87 writing as the parties' first contract because this document specifically and unambiguously states that it is an amendment to the July '87 writing.

**5.** The Third Circuit has indicated that such a standard is appropriate for disputes under section 4 of the FAA regarding motions to compel

arbitration of arbitration agreements that are alleged by one party not to exist. *See Par-knit Mills,* 636 F.2d at 54; *cf. The Saturday Evening Post Co. v. Rumbleseat Press, Inc.,* 816 F.2d 1191, 1196 (7th Cir.1987); *Commerce Park at DFW Freeport v. Mardian Construction Co.,* 729 F.2d 334, 340 (5th Cir.1984) (district court did not err when it granted a stay under section 3 of the FAA without holding an evidentiary hearing where there were no factual disputes regarding arbitrability).

contain an arbitration clause. That is, Fayda contends that there was a novation which eliminated the arbitration provision. (*See* D.I. 13 at 6–7.) The court rejects this argument.

Viewing the record in a light most favorable to Fayda, the Court concludes that there is absolutely no evidence to suggest there was a novation. In fact, the record suggests quite the opposite. The August '87 writing, for example, specifically refers to the parties' written sales agreement (the July '87 writing). Furthermore, the August '87 writing is plainly labeled at the top as a "CONTRACT amendment." *See supra* p. 1103. The contract which allegedly followed the August '87 writing also specifically refers to the parties' July '87 writing. *See supra* p. 1104. Moreover, the terms of the July '87 writing itself clearly contemplate price and possibly even shipping modifications. (*See* D.I. 9, Exhibit A at 1 ["Price for remaining 183MT is subject to negotiation if market price changes ... 17MT TO BE SHIPPED IN AUGUST OR SEPT.1987 [sic]. THE BALANCE IN 1987."].)

A novation, or in this case just a "substituted contract," occurs when "the parties intend the new contract to replace all of the provisions of the earlier contract...." Restatement (Second) of Contracts § 279 at 375 (1979); *see also* 15 S. Williston, *A Treatise on the Law of Contracts* § 1869 at 615 (3d ed. 1972). The burden is on the party claiming the novation. 15 S. Williston, *supra*, § 1873B at 633. In this case, Fayda has not proffered any evidence to create a genuine issue as to whether the parties intended to cause a novation and thereby eliminate the arbitration clause in the July '87 writing. Thus, the Court finds that as a matter of law there was no novation.

There is also no indication whatsoever in the record that the alleged modifications to the July '87 writing were meant to alter the parties' arbitration obligations. It is black letter law that "[w]here one contract modifies another, the terms of the new contract are found partly in the original contract and partly in the modifying contract." Restatement (Second) of Contracts § 149 comment a. Fayda has presented no evidence to indicate that the arbitration agreement was eliminated in the course of the parties' alleged modifications of the 1987 contract. Fayda has also failed to raise a genuine issue regarding its contention that the parties' alleged modifications of the July '87 writing were each intended as new contracts. The cases on which Fayda relies (*see* D.I. 13 at 5–6) therefore do not provide it with any support because in those cases such evidence *was* presented.[6] *See Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 869 (7th Cir.1985); *Great American Trading Corp. v. I.C.P. Cocoa, Inc.*, 629 F.2d 1282, 1284–85, 1288 (7th Cir.1980).

---

6. As the Court is applying a summary judgment standard to determine whether the requested evidentiary hearing is necessary, it is appropriate to reflect upon the duties of the non-movant in a summary judgment motion. Under the Federal Rules of Civil Procedure, the party seeking to avoid summary judgment must "set forth specific facts showing that there is a genuine issue for trial...." Fed.R.Civ.P. 56(e).

Our Court of Appeals recently offered comments on this issue, and these are particularly relevant in this case:

> The Supreme Court has made clear that the object of Rule 56(e) "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Fed'n*, [——] U.S. [——], 110 S.Ct. 3177 [111 L.Ed.2d 695] (1990). Rather, Rule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact "to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Id.* at ——, 110 S.Ct. at 3189. It is clear enough that unsworn statements of counsel in memoranda submitted to the court are even less effective in meeting the requirements of Rule 56(e) than are unsupported allegations in the pleadings.

*Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir.1990).

China Products submitted an affidavit (*see* D.I. 9, Chen Aff.); but Fayda did not. Fayda's position is that the current record is sufficient in and of itself to warrant dismissing China Products' motion for stay or, at the very least, to raise a genuine issue as the existence of an agreement to arbitrate, thereby requiring an evidentiary hearing on the issue. For the reasons stated in this Opinion, the Court does not agree. The current record does not reflect the existence of any genuine issues of fact, and hence an evidentiary hearing is simply not necessary.

### Unconscionability

■ Fayda's second defense to arbitration is that the arbitration provision should not be given effect because it is unconscionable. The problem with this argument, like the problem with the preceding novation argument, is that Fayda has not offered any evidence to create a genuine issue as to unconscionability. Counsel's arguments do not suffice.[7] *See supra* note 6.

Unconscionability is judged at the time the parties entered into the contract. *See* U.C.C. § 2–302(1). It is undisputed on the record before the Court that at the time the parties entered into their sales agreement (the July '87 agreement) Fayda knew it was purchasing aluminum that was to be shipped from the People's Republic of China. Furthermore, the arbitration clause at issue in this motion, which is located directly above the signature of Fayda's representative (*see id.* at 2), clearly states that the parties will submit to arbitration under the auspices of the Foreign Trade Arbitration Commission of the China Council for the Promotion of International Trade ("the China Council"). Counsel for Fayda argues that pursuant to this clause arbitration "will probably take place in China or a third country, and the defendant will have to go there at great expense of time and money...." (D.I. 13 at 10.) Needless to say, this is something Fayda should have considered *before it signed the contract.* "[T]he fact that a bargain is a hard one does not entitle a party to be relieved therefrom if he assumed it fairly and voluntarily." 17 Am.Jur.2d *Contracts* § 192 at 562 (1964); *see also Glopak Corp. v. United*

States, 851 F.2d 334, 338 (Fed.Cir.1988) (discussing the U.C.C. approach).

Despite its apparent belief that it is the "little guy" in this equation, *see supra* p. 1102, Fayda has not presented any evidence that would indicate coercion or oppression in its course of dealing with what it calls "an arm of the [Chinese] government," *i.e.* China Products. *Id.* Significantly, Fayda does not even argue, much less present evidence, that it did not know at the time it agreed to arbitrate that the China Council is, as alleged in its brief, "another arm of the [Chinese] government." (D.I. 13 at 10.) Similarly, Fayda does not argue that it did not know that arbitration under the direction of the China Council would, as alleged, probably take place in China or another foreign country. Fayda also does not argue that it had no choice but to agree to the arbitration provision because the aluminum goods were otherwise unavailable on the world market.[8] Fayda does not claim that any fraud or misrepresentation induced it to enter into the agreement to arbitrate,[9] and, finally, Fayda neither argues nor presents evidence to show that arbitration under the auspices of the China Council would somehow be unjust because of, for example, institutional bias or other like reason.

The Court concludes that the arbitration provision in the July '87 writing is not unconscionable. Fayda has failed to raise a genuine issue of fact regarding unconscionability, and hence it is not entitled to an evidentiary hearing on this point.

### Waiver of Arbitration

■ Fayda's next defense to arbitration is frivolous, and the Court will address it

---

**7.** Although, as noted, *see supra* p. 1105, neither party specifically briefed the issue of which standard governs the granting of an evidentiary hearing for a section 3 motion for stay, it is clear that both parties assumed that the Court would use a summary judgment standard. (*See, e.g.,* D.I. 13 at 7; D.I. 15 at 2.)

**8.** The conclusory remarks of counsel at oral argument are not sufficient to create a genuine issue of fact. (*See* D.I. 20 at 12 ["[W]e are saying that in this case the difference between the bargaining power of the parties is so great, and the expense of the American party, Fayda of [sic] going to China to arbitrate is so great that in this case it should be held to be uncon-

scionable. Granted, many other cases have held that arbitration in foreign countries—an arbitration clause requiring it in the foreign countries is enforceable. We just say that in this case the bargaining power is so uneven that it shouldn't be enforced."].)

**9.** In sum, there are no "well-supported claims" before the Court of the kind of "fraud or overwhelming economic power" that might afford relief from an obligation to arbitrate. *Mitsubishi,* 473 U.S. at 627, 105 S.Ct. at 3354, *quoted in Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 1921, 104 L.Ed.2d 526 (1989).

only briefly. Fayda argues that China Products waived the parties' arbitration agreement by engaging in negotiations and subsequent agreements instead of seeking arbitration when problems with the contract first arose. The arbitration clause itself, however, specifically provides that "[a]ll disputes arising in connection with this Sales Contract or the execution thereof shall be *settled amicably by negotiation.*" (D.I. 9, Exhibit A at 2 [emphasis added].) If "no settlement can be reached,the [sic] case under dispute shall *then* be submitted for *arbitration....*" (*Id.* [emphasis added].)

Fayda has not shown or even alleged that China Products has attempted to litigate any claims under the parties' 1987 contract. In fact, China Products' response to Fayda's counterclaim on this contract was the instant motion for stay under the FAA. Furthermore, Fayda has not alleged any prejudice from what it alleges is China Products' waiver of the arbitration remedy. Bearing in mind that a "waiver of the right to arbitration is not to be lightly inferred," *Brobst v. Dean Witter Reynolds Inc.*, No. 86–6077, slip op. at 3 (E.D.Pa. Dec. 7, 1987) (available on Westlaw at 1987 WL 26630); *accord Valero Refining, Inc. v. M/T Lauberhorn*, 813 F.2d 60, 66 (5th Cir.1987); *see also Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464, 466 (10th Cir.1988), the Court concludes that as a matter of law no waiver has been shown on this record.

*Relationship Between Counterclaim and China Products' Claim*

■ Fayda's final argument against the issuance of a stay is that the facts underlying its counterclaim on the 1987 contract relate to its course of dealing defense against China Product's claim on the 1989 contract. The Court rejects this argument as a basis for denying a section 3 motion for stay.

As counsel for Fayda himself noted at oral argument, this point is covered by the Supreme Court's opinion in *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217, 105 S.Ct. 1238, 1240, 84 L.Ed.2d 158 (1985). There, the Court held that the FAA did *not* permit a district court to decline to enforce an arbitration agreement because arbitrable and nonarbitrable claims are so intertwined that inefficient duplication of proceedings will be the result. *Id.* at 216–17, 105 S.Ct. at 1240–41. The Court reasoned that Congress's overriding interest in enforcing agreements to arbitrate must be guarded despite concerns over piecemeal litigation. *Id.* at 221, 105 S.Ct. at 1242.

Fayda's arguments, which go to the wisdom of the duplication of adjudications of the same issues, are no more persuasive than those presented in *Dean Witter*. Accordingly, the Court will not refuse to order a section 3 stay because Fayda's counterclaim is intertwined with the principal claim in this lawsuit.[10]

### CONCLUSION

Having considered and rejected all of Fayda's arguments against arbitration[11]

---

**10.** Fayda argues in the alternative that if the 1987 contract, on which its counterclaim is based, is found to contain an arbitration clause, the later 1989 contract—on which China Products' claim against Fayda is based—would also be arbitrable in accordance with the parties' course of dealings.

The Court notes that no party has moved for a stay or order compelling arbitration of the 1989 contract. In fact, the only motion presently before the Court is China Products' motion for a stay of the counterclaim on the 1987 contract. Thus, Fayda's alternative argument, which goes to the arbitrability of *another* contract, is irrelevant to the Court's resolution of the section 3 motion which is currently pending.

**11.** The Court notes that Fayda did not assert any defenses under state law. Although federal law

governs the enforceability and validity of the parties' arbitration agreement, *see supra* pp. 1104–1105, a recent Supreme Court opinion seems to indicate that state law defenses against arbitration may also be raised so long as such defenses apply to all contracts and do not discriminate against agreements to arbitrate. *See Perry*, 482 U.S. at 492–93 n. 9, 107 S.Ct. at 2527 n. 9; *cf.* 9 U.S.C. § 2. In this case, however, given the record, even if Fayda had invoked Delaware contract law principles, the Court would have reached the same result.

With regard to Fayda's novation defense, for example, Delaware law requires that the party claiming the novation demonstrate "clearly and satisfactorily" that the parties intended the alleged novation. *Fontana v. Julian*, No. 5056, slip op. at 4 (Del.Ch. Oct. 29, 1979) (available on

and having found that Fayda has raised no factual issues requiring an evidentiary hearing, the Court is satisfied from the present record that China Products is entitled to a stay under section 3 of the FAA. The parties' arbitration agreement is clearly broad enough to cover Fayda's counterclaim. *See supra* p. 1103. China Products' motion to stay this counterclaim pending arbitration will therefore be granted.

Westlaw at 1979 WL 4633). This standard mirrors the Court's discussion of general contract law principles. *See supra* p. 1106. Turning to Fayda's unconscionability defense, the Court notes that under Delaware law unconscionability is also determined as of the time of the contract's formation. *See* Del.Code Ann. tit. 6, § 2–302(1) & comment; *see also Lecates v. Hertrich Pontiac Buick Co.,* 515 A.2d 163, 173 (Del. Super.1986). Finally, Delaware law, like federal law, encourages arbitration, and doubts as to arbitrability are resolved in favor of arbitration. *See New Castle County v. U.S. Fire Insurance Co.,* 728 F.Supp. 318, 321 n. 5 (D.Del.1989).