# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

TIMOTHY A. BLAGG, SR.    :
G. DANIEL BLAGG,      :
            :
  Plaintiffs,      :   K23L-11-007 JJC
            :
  v.          :
            :
HB2 ALTERNATIVE HOLDINGS, :
LLC, a Delaware Limited Liability :
Company,        :
            :
  Defendant.      :

Submitted: September 24, 2024
Decided:  November 20, 2024

## OPINION & ORDER

Shane C. Heberling, Esquire, Parkowski, Guerke, & Swayze, P.A, Rehoboth Beach, Delaware, *Attorney for the Plaintiffs.*

Shannon D. Humiston, Esquire, McCarter & English, LLP, Wilmington, Delaware, *Attorney for the Defendant.*

**CLARK, R.J.**

Timothy A. Blagg, Sr. and G. Daniel Blagg (collectively "the Blaggs") filed a *scire facias sur* mortgage complaint naming HB2 Alternative Holdings, LLC ("HB2") as the defendant. The Blaggs seek to foreclose upon property located at 155 South Shore Drive, Dover, Delaware (the "Property"). HB2 acquired the Property after its predecessor in interest foreclosed on what the Blaggs contend was a mortgage junior to theirs. To that end, the Blaggs contend that they possessed priority mortgage-holder status and, as a result, HB2 took title subject to their mortgage (hereafter the "Disputed Mortgage").

The parties have filed cross-motions for summary judgment. Together, the motions raise issues regarding (1) HB2's standing to challenge whether the Disputed Mortgage is valid, and (2) whether the Disputed Mortgage is unenforceable as a matter of law because it lacked consideration. As explained below, HB2 has standing to challenge the Disputed Mortgage's validity. There remains a genuine issue of fact, however, regarding whether consideration supported it.

## I.    FACTS OF RECORD

Claire E. Blagg passed away in 2005. She left the Property to her children, Timothy A. Blagg, Sr., G. Daniel Blagg, and Barbara E. Mosley.[1] Ms. Mosley agreed to buy the Blaggs' respective shares.[2] The summary judgment record contains no extrinsic evidence to explain the relationship between several contractual instruments or the parties' intent when executing them. These gaps in the summary judgment record become important when considering HB2's motion. They make it impossible for the Court to draw a reasonable inference, one way or another, regarding the existence of consideration.

---

[1] Pls.' Resp. to Def.'s Interrog. No. 14 (D.I. 15, Ex. A).
[2] *Id.*

This sparse summary judgment record permits only the disjoined statement of facts that follows. First, Ms. Mosley executed a promissory note (the "Note") for $50,000 in favor of the Blaggs on June 21, 2007.[3] On the same day, she executed a $130,000 mortgage (the "Prior Mortgage"), which purportedly secured an unspecified obligation that she owed the Blaggs.[4] Someone then recorded the Prior Mortgage the following day.[5] Then, on December 6 and 13, 2008, the Blaggs executed a document that satisfied the Prior Mortgage (the "Satisfaction").

Next, on January 4, 2008, Ms. Mosley executed a home equity conversion mortgage (the "Reverse Mortgage") in favor of Financial Freedom Senior Funding Corporation ("Financial Freedom").[6] That same day—six months after Ms. Mosley executed the Prior Mortgage and several weeks after the Blaggs executed the Satisfaction—Ms. Mosley and the Blaggs executed a settlement statement (the "Settlement Statement") with Financial Freedom. The Settlement Statement recorded a $130,000 payment to the Blaggs.[7] That amount matched the amount secured by the Prior Mortgage but there is no further record evidence showing what the Blaggs did with the payment. Ms. Mosley then executed a $50,000 mortgage (the "Disputed Mortgage") on February 5, 2008, that by its terms, secured a $50,000 note (once again, the "Note"). In that way, the Disputed Mortgage purported to secure a debt created by the Note which Ms. Mosley had executed eight months prior.[8]

---

[3] Pls.' Mot. for Summ. J. at ¶ 3 (D.I. 8).
[4] Def.'s Cross-mot. for Summ. J. at ¶ 2 (D.I. 16); *see also* Pls.' Suppl. Resp. to Def.'s Interrog. No. 8 (D.I. 15, Ex. A).
[5] D.I. 16, Ex. C.
[6] D.I. 8 at ¶ 4.
[7] D.I. 16 at ¶ 3.
[8] D.I. 8 at ¶ 3.

The Disputed Mortgage was then recorded on February 6, 2008.[9] Someone then recorded the Reverse Mortgage and the Satisfaction on February 28, 2008.[10] Financial Freedom then assigned the Reverse Mortgage to Mortgage Electronic Registration Systems, Inc. (MERS) on May 1, 2009, which assigned it to Longbridge Financial, LLC ("Longbridge") on February 17, 2022.[11]

In the interim, Ms. Mosley passed away in December 2021.[12] The Property then passed by will to her husband, Edward C. Merna.[13] By virtue of Ms. Mosley's passing, the Reverse Mortgage fell into default.[14] Longbridge, who acquired the Reverse Mortgage after the default, foreclosed on and sold the Property through a sheriff's sale.[15] Longbridge then purchased the Property by credit bid and received title by sheriff's deed dated June 1, 2023.[16] Thereafter, Longbridge transferred title in the Property to HB2 Alternative Holdings, LLC ("HB2"), an investment holding company of Longbridge, on July 27, 2023.[17]

The Blaggs alleged that HB2 is in default because HB2 refuses to pay them.[18] They now seek an *in rem* judgment against HB2 as recourse for the amounts they contend are due under the Note and Disputed Mortgage.[19]

## II. PROCEDURAL HISTORY AND THE PARTIES' CONTENTIONS

The Blaggs filed their *scire facias sur* mortgage complaint on November 15, 2023.[20] Initially, they included an unsigned copy of the Note—that the Disputed

---

[9] *Id.*
[10] *Id.* at ¶ 4; D.I. 16, Ex. C.
[11] D.I. 8 at ¶ 5.
[12] *Id.* at ¶ 6.
[13] *Id.*
[14] *Id.* ¶ 7.
[15] *Id.*
[16] D.I. 8 at ¶ 7.
[17] *Id.*
[18] D.I. 8 at ¶ 9.
[19] Pls.' Compl. (D.I. 1, Ex. 7).
[20] D.I. 1.

Mortgage purportedly secured—as an exhibit to their complaint.[21] HB2 then answered the complaint and raised numerous affirmative defenses.[22]

The Blaggs now move for summary judgment. They contend that HB2 has no standing to contest the Disputed Mortgage's validity.[23] HB2 disagrees because it owns the land that is the subject of this *in rem* action and contends that its ownership interest provides it standing to challenge whether the Disputed Mortgage was valid from the outset.[24]

HB2, for its part, contemporaneously prosecutes a cross-motion for summary judgment. It challenges the Disputed Mortgage based upon an alleged lack of consideration to support it.[25] It bases this argument primarily on the Blaggs' response to a single interrogatory.[26] Namely, HB2 contends that an interrogatory answer concedes that the purported consideration for the Disputed Mortgage was a pre-existing duty that Ms. Mosley owed to the Blaggs. According to HB2, that equates to an absence of consideration.[27]

The Blaggs counter that there is a genuine issue of material fact regarding consideration.[28] To that end, the Blaggs characterize the Disputed Mortgage as a substitute contract that legally released Ms. Mosley from any duty owed under the Prior Mortgage.[29] In that way, they maintain that trial evidence will demonstrate that consideration supported the Disputed Mortgage.

---

[21] *Id.*, Ex. 2.
[22] Def.'s Answer (D.I. 6).
[23] D.I. 8.
[24] D.I. 15.
[25] D.I. 16.
[26] D.I. 16 at ¶ 11.
[27] *Id.* at ¶¶ 10–12.
[28] Pls.' Resp. to Def.'s Cross-mot. for Summ. J. (D.I. 18).
[29] D.I. 18 at ¶ 6, ¶ 8..

Amid these cross-motions, the Blaggs sought to amend their complaint to include a signed copy of the Note as an exhibit.[30]  The Court heard oral argument on the parties' motions on September 24, 2024.  At the hearing, the Court granted the Blaggs' motion to amend without objection.[31]  This  decision resolves the parties' respective motions for summary judgment.

### III.   STANDARDS

Under Superior Court Rule 56, summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[32]  On a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party.[33]  The moving party bears the initial burden to demonstrate that there are no genuine issues of material fact.[34]  Upon such a showing, the burden then shifts to the non-moving party to identify evidence that demonstrates a remaining issue of fact.[35]  Furthermore, summary judgment is inappropriate when a more comprehensive inquiry into the facts is necessary.[36]

Here, there are cross-motions for summary judgment.  Parties do not necessarily concede the absence of a factual dispute simply because they file cross-motions for summary judgment.[37]  Namely, the filing of cross-motions does not constitute a *per se* concession that there are no facts in dispute if the parties assert

---

[30] Pls.' Mot. to Am. (D.I. 22).  The Blaggs represented in their motion that although they originally could not locate the Note, they recently found it.
[31] Judicial Action Form (D.I. 25).
[32] Super. Ct. Civ. R. 56(c).
[33] *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99 (Del. 1992).
[34] *JPMorgan Chase Bank v. Hopkins*, 2013 WL 5200520, at *2 (Del. Super. Sept. 12, 2013).
[35] *CitiMortgage, Inc. v. Kine*, 2011 WL 6000755, at *1 (Del. Super. Nov. 1, 2011).
[36] *Phillips-Postle v. BJ Prods., Inc.*, 2006 WL 1720073, at *1 (Del. Super. Apr. 26, 2006) (citing *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962).
[37] *Cont'l Ins. Co. v. Rutledge & Co.,* 750 A.2d 1219, 1227 (Del. Ch. 2000).

different grounds for their opposing motions.[38] In such a case, a summary judgment movant concedes an absence of a factual dispute only for the purposes of its own motion.[39]

Finally, Delaware law permits a mortgagee to enforce a mortgage by writ of *scire facias* in the Superior Court.[40] A writ of *scire facias* requires a defendant to "appear before the Court to show cause . . . why the mortgaged premises ought not to be seized and taken in execution for payment of the mortgage money."[41] Stated differently, a writ of *scire facias* generates a rule to show cause proceeding that requires a mortgagor to appear before the Court and explain why the mortgagee should not be permitted to foreclose on the relevant property.[42]

## IV. DISCUSSION

For the reasons below, a defendant who owns property subject to a mortgage has standing to challenge the mortgage's validity when the mortgage holder seeks to foreclose that mortgage. This remains the case even when the defendant is not a party to, or third-party beneficiary of, that mortgage. The separate issue of what, if any, consideration supported the Disputed Mortgage in this case raises a more difficult question, however. The Court must consider the facts presented at trial before answering that question.

### A. HB2 has standing to contest the validity of the Disputed Mortgage.

The Blaggs seek to foreclose the Disputed Mortgage which they insist binds HB2's real property. They seek judgment as a matter of law because they contend

---

[38] *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997).
[39] *Id.* (citations omitted).
[40] *Am. Nat. Ins. Co. v. G-Wilmington Assocs.*, 2002 WL 31383924, at *2 (Del. Super. Oct. 18, 2002).
[41] 10 *Del. C.* § 5061(a); *see also* 2 *Woolley on Delaware Practice* § 1356 (1906) (describing more particularly the statutory right to foreclose a mortgage by *scire facias* in the Superior Court).
[42] *Am. Nat. Ins. Co.*, WL 31383924, at *2.

HB2 lacks standing to challenge it.[43]  To that end, the Blaggs rely on the general principle that "[u]nder Delaware contract law, a nonparty to a contract generally has no rights relating to it unless he or she is a third-party beneficiary."[44]

The parties' dispute presents what, surprisingly, is a novel question under Delaware law.  That is, whether a *terre-tenant*[45]—a record owner who acquires title subject to an existing mortgage—has standing to challenge a mortgage's validity if the owner is not a party to, or third-party beneficiary of, that mortgage.  The parties have identified no Delaware decisional law addressing the issue.  Nor has the Court located any.  As explained below, statutory law and general contract principles provide a clear answer nonetheless.

At the outset, a mortgagee's right to foreclose on a mortgage by writ of *scire facias* is codified in 10 *Del. C.* § 5061 ("Section 5061").  Section 5061 defines the necessary parties in a foreclosure action as follows:

> in addition to the mortgagor, and such mortgagor's heirs, executors, administrators or successors, the following persons shall be necessary parties in every mortgage foreclosure action: . . . *Record owners acquiring title subject to the mortgage (terre tenants) which is being foreclosed upon.*[46]

Neither Section 5061 nor accompanying Code provisions define the phrase "necessary party."  In the absence of a definition, the Court looks to Superior Court

---

[43] D.I. 8 at ¶¶ 17, 18.

[44] *CitiMortgage, Inc. v. Bishop*, 2013 WL 1143670, at *5 (Del. Super. Mar. 4, 2013); *see e.g. JPMorgan Chase Bank v. Smith*, 2014 WL 7466729, at *4 (Del. Super. Dec. 15, 2014).

[45] A *terre-tenant* is defined as "[o]ne who takes title from a mortgagor that is subject to an existing lien of a mortgage." 59 C.J.S. Mortgages § 482 (2024).  The Delaware General Assembly also defines the term in 10 *Del. C.* § 5061(b) as "[r]ecord owners acquiring title subject to the mortgage (terre tenants) which is being foreclosed upon."  A terre-tenant, "in a general sense, is one who is seized or actually possessed of lands as the owner thereof.  In a *scire facias sur* mortgage or judgment a terre-tenant is, in a more restricted sense, one other than the debtor, who becomes seized or possessed of the debtor's lands subject to the lien thereof."  *Hulett v. Mut. Life Ins. Co.,* 6 A. 554, 555 (Pa. 1886).

[46] 10 *Del. C.* § 5061(b) (emphasis added).

8

Civil Rule 19(a) which supports HB2's contention that it has standing. Rule 19(a) provides the criteria that defines who is a necessary party that must be joined in a civil action when feasible. A party is necessary if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.[47]

When applying these criteria, Section 5061's inclusion of terre-tenants as required parties in mortgage foreclosure actions places them within the class of parties necessary for complete and adequate relief. After all, a terre-tenant *is* the record owner of the property. Additionally, a property owner such as HB2 faces a substantial risk of incurring inconsistent obligations if prevented from challenging the mortgage central to the foreclosure action.[48] It would be illogical and fundamentally unfair to preclude a terre-tenant from challenging it. Because HB2 is a necessary party to this action, it follows that it must have the ability to protect its interest in the Property. HB2 may assert any traditionally recognized defense in a *scire facias sur* mortgage action when doing so.[49]

---

[47] Super. Ct. Civ. R. 19(a); *see also Roberts v. Delmarva Power & Light Co.*, 2007 WL 2319761, at *2 (Del. Super. Aug. 6, 2007) (recognizing that while the current version of Superior Court Civil Rule 19(a) does not include the phrase "necessary party," Rule 19(a) applies the concept).

[48] *See generally Abbott Supply Co. v. Shockley*, 128 A.2d 794, 801 (Del. Super. 1956), *aff'd*, 135 A.2d 607 (1957) (holding that a defendant terre-tenant was obligated to litigate the validity of a mortgage obligation at the time of the mortgage foreclosure).

[49] *See* Thomas Campbell Foster, *A Treatise on the Writ of Scire Facias* 353 (London, V. & R. Stevens & G. S. Norton 1851) ("[A] terretenant may plead in bar to a *scire facias*, anything which shows his lands not liable to execution.").

9

Here, HB2 raises a plea in avoidance of the Disputed Mortgage.[50] A plea in avoidance "admits the allegations of the complaint but asserts a matter which destroys the effect of the allegations and defeats the plaintiff's right."[51] Avoidance "relate[s] to the mortgage sued upon, i.e., the plea must relate to the validity or illegality of the mortgage documents."[52] Generally, the matters permitted in a plea in avoidance include: "act[s] of God, assignment of cause of action, conditional liability, discharge, duress, exception or proviso of statute, forfeiture, fraud, illegality of transaction, justification, nonperformance of condition precedent, ratification, unjust enrichment and waiver."[53] HB2 asserts that the Disputed Mortgage was invalid *ab initio* because it lacked consideration and would unjustly enrich the Blaggs as a result.[54]

The Blaggs cite the Superior Court's holding in *JPMorgan Chase Bank v. Smith* to support their argument that HB2 has no standing. There, the Superior Court applied a long line of precedent recognizing that a mortgagor has no standing to

---

[50] Historically, Delaware courts have recognized a limited set of defenses in a *scire facias sur* mortgage action. These defenses were once governed by the following provision: "[t]he defendant in a *scire facias* on a mortgage, may plead satisfaction, or payment, of all, or any part of the mortgage money, or any other lawful plea in avoidance of the deed, as the case may require." *Gordy v. Preform Bldg. Components, Inc.*, 310 A.2d 893, 895 (Del. Super. 1973) (citing Revised Code of Delaware, 1935, par. 4859, Ch. 133, & 68). The General Assembly omitted the statutory language setting forth the defenses permitted in *scire facias sur* mortgage actions in 1953, however. *Am. Nat. Ins. Co.*, WL 31383924, at *2. Nevertheless, nothing in the current Delaware Code nor relevant case law suggests a departure from this limited set of defenses. *Id*.; *see also Christiana Falls, L.P. v. First Fed. Sav. & Loan Ass'n of Norwalk*, 520 A.2d 669 (Del. 1986) (holding that the limited class of defenses in a *scire facias sur* mortgage action include payment, satisfaction, or avoidance).

[51] *Shrewsbury v. The Bank of New York Mellon*, 160 A.3d 471, 475 (Del. 2017) (quoting *Gordy*, 310 A.2d at 895)).

[52] *Wells Fargo Bank, NA v. Nickel*, 2011 WL 6000787, at *2 (Del. Super. Nov. 18, 2011) (citing *Am. Nat. Ins. Co.*, WL 31383924, at *2)).

[53] *Gordy*, 310 A.2d at 895–96.

[54] D.I. 15 at ¶ 4; *see Fox v. Christina Square Assoc., L.P.,* 1994 WL 146023, at *6 (Del. Super. Apr. 5, 1994) (holding that a claim that the mortgage itself was invalid, on its face, constituted a plea in avoidance in a *scire facias sur* mortgage proceeding and was therefore a proper defense).

challenge *an assignment* of a mortgage if the mortgagor was not a party to, or an intended beneficiary of, the assignment.[55] The rationale for this precedent is twofold. First, the assignment of a mortgage is wholly distinct from the debt it secures.[56] Second, an assignment has no effect on whether the mortgagee can exercise its authority to foreclose; it merely affects which party can exercise the right to do so.[57]

This general rule does not apply in this case for several reasons. First, HB2 does not challenge an assignment's validity. Instead, it challenges whether the Disputed Mortgage itself was enforceable from the outset. Furthermore, HB2 is not a mortgagor as were the defendants in *Smith* and similar cases. The defendants in those cases had unquestioned standing to contest the validity of the mortgages – just not the assignments. Here, HB2 acquired the Property from a predecessor-in-interest who had foreclosed upon an allegedly junior mortgage on the Property. As a result, HB2 will lose its property interest if the Blaggs secure an *in rem* judgment and foreclose.

---

[55] *Smith*, 2014 WL 7466729, at *4; *see also HSBC Mortg. Corp. (USA) v. Bendfeldt*, 2014 WL 600233, at *3 (Del. Super. Feb. 4, 2014), *aff'd*, 2014 WL 4978666 (Del. Oct. 7, 2014) (holding that Delaware law did not recognize a defendant-mortgagor as a party to a mortgage assignment and therefore one did not have standing to challenge the validity of that mortgage assignment); *In re Walker*, 466 B.R. 271, 274–75 (Bankr. E.D. Pa. 2012) (recognizing federal consensus that a borrower lacks standing to request a judicial determination that a loan assignment is invalid when the borrower is neither a party to nor a third-party beneficiary of the assignment agreement); *In re Correia*, 452 B.R. 319, 324 (B.A.P. 1st Cir. 2011) (holding that debtors lacked standing to challenge the validity of a mortgage assignment because they were not parties to a pooling and servicing agreement, nor could they show that they were third-party beneficiaries).

[56] *Shrewsbury v. The Bank of New York Mellon*, 160 A.3d 471, 477 (Del. 2017); *see also S.C. Nat. Bank v. Halter*, 293 S.C. 121, 359 S.E.2d 74, 77 (S.C. Ct. App. 1987) (internal citations omitted) ("The assignment of a mortgage as distinct from the debt it secures is nugatory and confers no rights upon the transferee, absent some indication that the parties also intended to transfer the debt.").

[57] *Smith*, 2014 WL 7466729, at *5 (quoting *Deutsche Bank Nat. Tr. Co. v. Moss*, 99 A.3d 226 (Del. 2014)); *see also Bishop*, 2013 WL 1143670, at *4 (quoting *Dehdashti v. The Bank of New York Mellon, et al.*, 1:12–cv–595–TCB (D. Ga. June 7, 2012) ("The assignment does not affect whether the security deed's power of sale can be exercised; it merely affects who can exercise it.").

General principles of standing in contract cases also support HB2's standing. In *Toelle v. Greenpoint Mortgage Funding, Inc.*,[58] the Superior Court examined those principles in the context of a mortgage foreclosure action. There, the Court observed that "[b]ased on contract princip[les], if a debtor is not a party to a transfer, not a third party beneficiary, *or cannot show it sustained some type of legal harm as a result of the transfer*, it does not have standing to challenge . . . enforcement of the note [or the mortgage]."[59] While the court in *Toelle* found no standing, it did so only after confirming that the defendant suffered no actual injury or risked no imminent harm.[60] The same cannot be said of HB2 because it holds record title to the property. It will sustain legal harm—monetary loss to prevent foreclosure or foreclosure—if the Blaggs prevail.

Other Delaware and Federal cases echo the same principle. Namely, when a party suffers legal harm resulting from the application of a contract, it possesses the standing necessary to challenge the contract's validity.[61] Again, this principle is echoed in Superior Court Civil Rule 19. It requires joinder of parties if their absence

---

[58] 2015 WL 5158276, at *4 (Del. Super. Apr. 20, 2015).

[59] *Id*. at *3 (citing *Branch Banking and Trust Co. v. Eid*, 2013 WL 3353846, *3 (Del. Super. Jun. 13, 2013)) (emphasis added).

[60] *Id*. at *5 ("[E]ven if Delaware recognized the tort of wrongful foreclosure, no injury has actually occurred, nor is imminent, as there is no pending foreclosure action[.]").

[61] *See Rooker Holdings, LLC*, 2020 WL 1866874, at *2 ("Defendant cannot challenge the validity of these assignments because, as mortgagor and absent special circumstances, Defendant lacks standing to bring such a challenge. The special circumstances include: defendant being a party to the transfer of the mortgage, defendant being a third-party beneficiary, *and defendant sustaining legal harm as a result of the transfer*.") (emphasis added); *see also Branch Banking & Tr. Co. v. Eid*, 2013 WL 3353846, at *4 (Del. Super. June 13, 2013) ("[The] debtor is not a party to a mortgage assignment, is not a third-party beneficiary to the assignment and cannot show legal harm as a result of the assignment. As such, the debtor has no legally cognizable interest in an assignment and therefore is not in a position to complain about it."); *Walker*, 466 B.R. at 285 ("The threshold inquiry in analyzing a party's standing is to evaluate whether the party can demonstrate that the party has suffered or will suffer injury in fact. If a borrower cannot demonstrate potential injury from the enforcement of the note and mortgage by a party acting under a defective assignment, the borrower lacks standing to raise the issue.").

12

may impair or impede their ability to protect their interests.[62]  In fact, in cases where joinder is not feasible, Rule 19(b) contemplates dismissal as a potential remedy for failure to add a necessary party.[63]  Likewise, Superior Court Civil Rule 24 permits intervention as a matter of right for the same reason.[64]   If someone must be joined or has the right to intervene, she must be permitted to defend herself.

Finally, recognition of a terre-tenant's standing to challenge a mortgage's validity is consistent with Delaware's status as a "lien theory" state.[65]  In Delaware, "a mortgage is merely a security for the payment of a debt, or for the performance of some other condition."[66]  To this end, a mortgage does not convey title in real property; rather, it creates a lien that binds property to the debt it secures.[67]  As a lien, "[a]ll persons acquiring title to or right in mortgaged premises subsequent to the mortgage, take title subject to it[.]"[68]  In that way, a subsequent purchaser "own[s] the property with the understanding that there is a lien, held by another, on the property that can be the subject of a *scire facias* action if defaulted."[69]  Following a default, a subsequent purchaser—even though not a party to the mortgage or note—suffers actual injury upon foreclosure. Such potential injury provides standing.

---

[62] Super. Ct. Civ. R. 19(a).

[63] *Id.* R. 19(b).

[64] *See* Super. Ct. Civ. R. 24.; *see also Solomon v. Duggan*, 2004 WL 692903, at *2 (Del. Super. Mar. 11, 2004) (holding that intervention in mortgage foreclosure proceedings is strictly limited, but permitted "where the intervenor asserts a claim which is an integral part of the mortgage foreclosure transaction, such as a claim challenging the validity of the mortgage.") (citation omitted).

[65] *Matter of Spencer*, 115 B.R. 471, 477 (D. Del. 1990) (citing *In re Skelly,* 38 B.R. 1000, 1002 (D.Del.1984)).

[66] 2 *Woolley on Delaware Practice* § 1353 (1906).

[67] *Matter of Spencer*, 115 B.R. at 477.

[68] 2 *Woolley on Delaware Practice* § 1360 (1906).

[69] *Id.*

For these reasons, HB2, as a terre-tenant, is a necessary party to this *scire facias sur* mortgage foreclosure action. Its status as a necessary party provides it standing to challenge the Disputed Mortgage's validity as a matter of law and permits it to assert a plea in avoidance. Accordingly, the Blaggs' motion for summary judgment must be **DENIED**.

**B. There remains a genuine issue of material fact as to whether the Disputed Mortgage was supported by consideration.**

HB2's cross-motion for summary judgment challenges the validity of the Disputed Mortgage. It contends that there are no facts to permit a reasonable inference that consideration supported it.[70] For that contention, HB2 points primarily to an alleged admission in the Blaggs' response to an interrogatory. The interrogatory requested that the Blaggs identify "any chattel, including money, in exchange for the [Disputed] Mortgage."[71] The Blaggs objected to the interrogatory based on relevance but then, in part, responded: "[t]he consideration for the Note was in fact the remaining balance of the buyout which Mosley owed to Plaintiffs."[72]

HB2 contends that the Blaggs' answer bindingly admits that the purported consideration for the Disputed Mortgage was a pre-existing duty. Additionally, HB2 relies on the eight-month gap between the time when Ms. Mosley executed the Note and the Disputed Mortgage. The gap, it contends, provides additional evidence that there was no present consideration exchanged between the parties to the Disputed Mortgage, which made it invalid at inception.

Conversely, the Blaggs contend that HB2 incorrectly interprets its interrogatory response.[73] They argue that their response refers to an agreement to satisfy Ms. Mosley's prior debt to them in exchange for the execution of a new

---

[70] D.I. 16 at ¶ 11.
[71] D.I. 15, Ex. A, Pls.' Resp. to Def.'s Interrog. No. 14.
[72] *Id.*
[73] D.I. 18 at ¶ 6.

14

mortgage at a lesser agreed upon amount.[74]  Under that theory, which seems equally plausible on this sparse record, the Blaggs contend that the Satisfaction and discharge of Ms. Mosley's obligation under the Prior Mortgage served  as valid consideration.[75]  Finally, the Blaggs emphasize that the Note and the Disputed Mortgage recite consideration and appear valid on their face.

Consideration is a foundational requirement for any contract and contracts are generally unenforceable without it.[76]  A benefit to a promisor or a detriment to a promisee suffices.[77]  Because mortgages are contractual instruments, they must also be supported by mutually-bargained-for consideration."[78]  Furthermore, past consideration—itself a misnomer—is not consideration and cannot form the basis of a valid contract.[79]  A pre-existing duty does not provide the legal detriment necessary to support a contract.[80]

A substituted contract, on the other hand, may be enforceable if  supported by consideration.[81]  Such a contract is defined as an exchange of promises which extinguishes an underlying duty.[82]  It is a new contract that satisfies a promisor's duty because the promisee accepts it as such.[83]  In that vein, the parties to a substituted contract enter into it with the understanding that it will replace all the

---

[74] *Id.*

[75] *Id.*

[76] *James J. Gory Mech. Contracting, Inc. v. BPG Residential Partners V, LLC*, 2011 WL 6935279, at *2 (Del. Ch. Dec. 30, 2011).

[77] *Cont'l Ins. Co.,* 750 A.2d at 1232; 3 *Williston on Contracts* § 7:4 (4th ed.).

[78] *Rudnitsky v. Rudnitsky*, 2000 WL 1724234, at *7 (Del. Ch. Nov. 14, 2000).

[79]  *Cont'l Ins. Co.,* 750 A.2d at 1232.

[80]  *Id.*; *see also James J. Gory Mech. Contracting*, 2011 WL 6935279, at *2 (stating "[a] commitment to honor a pre-existing obligation works neither benefit nor detriment; therefore, '[a] promise to fulfill a pre-existing duty, such as a promise to pay a debt owed, cannot support a binding contract' because consideration for the promise is lacking.").

[81] *Restatement (Second) of Contracts* § 279 cmt. b (1981).

[82] *Michael J. Benenson Assocs., Inc. v. Orthopedic Network of New Jersey,* 54 F. App'x 33, 36 (3d Cir. 2002).

[83] *Restatement (Second) of Contracts* § 279 (1981).

provisions of the prior contract.[84]  Accordingly, "[t]he exchange of promises itself, rather than performance of [a] substituted obligation, is what extinguishes liability on the underlying [duty]."[85]  In effect, the execution of the substitute contract erases all executory duties owed under the former contract.

The Blaggs and HB2 interpret the importance of the Blaggs' interrogatory response differently.  Aside from their respective positions, granting summary judgment based upon a lack of consideration is inappropriate on this record.  Namely, a genuine issue of material fact remains regarding whether the Disputed Mortgage (1) lacked consideration, or alternatively (2) was a substituted contract supported by consideration.  On the one hand, the Disputed Mortgage itself references valid consideration and that it secures the $50,000 Note which itself recites consideration. On the other hand, the unexplained timing, inconsistencies regarding the amounts, and the overlapping nature of the recited obligations leave the record unclear as to what happened.  Trial evidence may demonstrate that there was consideration or that the purported consideration was a pre-existing duty.

On balance, neither party identified evidence nor attempted to explain the significant evidentiary gaps or inconsistencies in the record that would negate the opposing parties' respective case theories.  HB2, as the movant on this issue, bears the brunt of the record's lack of clarity.  It has not met its initial burden.  A more thorough inquiry into the facts at trial will be necessary to clarify the application of the law to the facts.  As a result, HB2's cross-motion for summary judgment must be **DENIED**.

## V.    CONCLUSION

In summary, HB2 possesses standing to contest the validity of the Disputed Mortgage.  Gaps in the summary judgment record preclude summary judgment in

---

[84] *China Res. Prod. (U.S.A.) Ltd. v. Fayda Int'l, Inc.*, 747 F. Supp. 1101, 1106 (D. Del. 1990).
[85] *Michael J. Benenson Assocs., Inc*,  54 F. App'x at 36.

favor of HB2, however. Accordingly, both the Blaggs' and HB2's motions are **DENIED.** The matter will be resolved after a bench trial currently scheduled in August 2025. If either party requests an earlier trial date, they may write the Court and ask for a scheduling conference to consider one.

      **IT IS SO ORDERED.**

/s/ Jeffrey J Clark
Resident Judge
